KENNETH DAVID JOHNSON, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 12262

December 30, 1981                          637 P.2d 1209

[3]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in the place of THE HONORABLE CAMERON M. BATJER, who voluntarily disqualified himself in this case. Nev. Const., art. 6, § 19; SCR 10.

[4]The Governor designated The Honorable Joseph McDaniel, Judge of the Fourth Judicial District Court, to sit in the place of THE HONORABLE JOHN MOWBRAY, Justice. Nev. Const., art. 6, § 4.

622

*Jeffrey D. Sobel,* Las Vegas, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City; *Robert J. Miller,* District Attorney, and *James Tufteland,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, SPRINGER, J.:

Appellant Johnson appeals from convictions of burglary and robbery with a deadly weapon claiming the trial court erred in

admitting evidence obtained in violation of his fourth amendment rights. Appellant also assigns as error the admission into evidence of certain extrinsic evidence to impeach an alibi witness.

The crime was committed at a convenience store. Because the robber's face was covered, positive identification of the suspect was impossible. Witnesses did, however, obtain the robber's car license number as he fled and recalled that the robber wore a blue bandana and a black, western-style hat which had a distinctive turquoise and silver band. The weapon used was believed to be a small calibre revolver.

Using the vehicle license number, police quickly ascertained the name and address of the owner and within ten minutes of the robbery arrived at appellant's home. There they found Johnson leaving from a side door. Johnson was stopped by the police, advised of the nature of the investigation and given his Miranda rights. Thereafter Johnson agreed that he and the police officers would go into his house and "discuss the situation."

Inside Johnson's home officers found Johnson's brother, Ronald Johnson, who bore a certain fraternal resemblance to Johnson. The officers immediately made a sweep search "to secure the house to see if there was any subjects there." In the hallway one officer was able to see on a nightstand in a bedroom off the hall a black western-style hat with a turquoise and silver band. The hat was later retrieved. The officer then knocked on a closed bedroom door and discovered therein a third subject, Johnson's father, who had been sleeping.

The police and the three men, Johnson, his brother and his father, discussed the matter together in the living room. During the discussion Johnson's father admitted owning a gun, which Johnson then produced. The brothers agreed to join the officers in a visit to the store, where the clerk positively identified the black hat. The clerk also indicated that the gun was similar, if not identical, to that used in the robbery.

On returning to appellant's home, the officers obtained the signed permission of all three occupants to make further search of the home.

The officers found under Johnson's mattress some R.C. Cola caps which had been taken in the robbery and some currency in the approximate amount and denominations reported to have been stolen from the store. Police also found a blue bandana which matched the description given by the store clerk. At this point officers placed Johnson under arrest.

The first issue to be decided is whether under the circumstances of this case a warrantless seizure of the hat found on

the premises was a violation of Johnson's fourth amendment rights against unlawful search and seizure. We hold that under the facts of this case there was no such constitutional violation.

■■■■■■■■■

Respondent claims first that the hat was in "plain view" and hence subject to seizure. We note that "plain view" by itself is never sufficient to justify a warrantless seizure. The plain view doctrine requires (1) that officers be lawfully present at the point of observation and (2) that the discovery be inadvertent. Barnato v. State, 88 Nev. 508, 512, 501 P.2d 643, 645-46 (1972); *see* Coolidge v. New Hampshire, 403 U.S. 443, 466 (1971) (plurality opinion). Since the officers were invited inside only to "discuss the situation," appellant did not initially consent to a warrantless search of the premises. The only possible justification for warrantless search in this case is the so called "emergency doctrine." Under exigent circumstances, law enforcement officers may enter and search private premises without a warrant and prior to arrest. One exigent circumstance is the reasonable belief that there is an urgent need to pursue an investigation which involves a substantial and imminent threat of death or bodily injury. The search, however, must not be a *planned* warrantless search with an accompanying intent either to arrest or obtain evidence. Banks v. State, 94 Nev. 90, 575 P.2d 592 (1978); Geary v. State, 91 Nev. 784, 544 P.2d 417 (1975); State v. Hardin, 90 Nev. 10, 518 P.2d 151 (1974).

■■■■■■■

In the present case the police were in hot pursuit of a suspected robber who reportedly was armed with a revolver. Proceeding to the address registered for the getaway vehicle, officers saw a car which resembled the vehicle described by witnesses. They spotted a man leaving the house. The man had the general physical characteristics of the robber. Subsequently the officers with the suspect's consent found themselves inside the house.

It would have been shoddy and even hazardous police investigation for the officers not to have secured the premises in order to determine whether or not fugitives or armed persons were present. There is nothing in the record to indicate that officers were acting in subterfuge or that they searched the house with the intention of getting evidence.

Since the hat was inadvertently spotted during the course of securing the house, the police were entitled to seize it. "When an exigency gives rise to a search, it may be carried through to its completion in whatever area law enforcement officers may

reasonably expect to find the object of their search.'' Geary v. State, 91 Nev. at 790, 544 P.2d at 421.

All evidence taken from appellant's home was legally seized. Either the items were seized under the emergency doctrine or they were taken with the consent of the house occupants. All items were therefore properly admitted into evidence.

Appellant's second assignment of error is that the trial court erred in permitting a law clerk employed by the district attorney to testify as to his belief that the Church of Christ was opposed to smoking. Police officers had testified that Johnson's explanation of his departure from the house on the night of the robbery was that he was out of cigarettes and had gone out to purchase some. Johnson had claimed he was unable to purchase any since he later discovered that he had left his money at home. Doubt about this excuse was amplified when the officers noticed him smoking during the period after the robbery. Johnson's brother Ronald claimed that he had given Johnson the cigarettes which he had been smoking.

Ronald Johnson had described himself as a minister of the Church of Christ. The prosecution sought to challenge Ronald's testimony by showing that smoking is not tolerated in the Church of Christ and that, therefore, if Ronald was a minister of the church, he probably did not possess cigarettes to provide to appellant.

Appellant describes this testimony as "collateral" and complains that the law clerk was not competent to give his opinion that he "guessed" that the Church of Christ was "against smoking."

Such evidence is not necessarily collateral. It certainly bears on the defense theory by tending to show that either the defendant or his brother was lying about the cigarettes.

Although the law clerk was not competent to give evidence of Church of Christ doctrine or tenet, certainly no such prejudicial harm occurred as would deny Johnson a fair trial.

Affirmed.

GUNDERSON, C. J., and MANOUKIAN and MOWBRAY, JJ., and ZENOFF, SR. J.,[1] concur.

---

[1]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in this case in place of THE HONORABLE CAMERON BATJER. Nev. Const., art. 6, § 19; SCR 10.