AUGUSTA CHARLES GIVENS, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 11375

December 29, 1982                                    655 P.2d 533

*Morgan D. Harris,* Public Defender, and *Thomas L. Leen* and *Marcus Cooper,* Deputy Public Defenders, Clark County, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City; *Robert J. Miller,* District Attorney, and *Susan Johnson,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Appellant was convicted of first degree murder for the beating death of his wife, Vickie Lynn Frierson, and sentenced to life imprisonment with the possibility of parole. On appeal, he makes numerous assignments of error, only two of which we deem worthy of discussion. Finding no error, we affirm the judgment.

On the afternoon of February 26, 1978, appellant summoned an ambulance to the apartment he shared with the victim and her baby daughter. The paramedics found Ms. Frierson lying on the bed, with apparent head trauma and signs that she had been brutally beaten. The walls and doorjamb of the apartment were stained in several places with blood. Appellant told the paramedics Frierson had been hurt "last night." She lapsed into a coma on the way to the hospital, and died shortly thereafter of increased intracranial pressure due to internal hemorrhaging, caused by multiple blunt-force trauma to the head.

Ms. Frierson was six or seven months pregnant at the time of her death. She had been severely beaten about the arms, shoulders, and face. Several areas of her back were bruised, and she suffered internal bleeding and a broken rib in the area of her kidneys. She also had bruises on her arms of a peculiar V-shape, matching the shape of an aluminum crutch, found broken and stained with blood of the same type as hers in a trash dumpster near the apartment.[1]

The testimony of prosecution witnesses established that the victim and appellant went to a party at a friend's house on the evening of the murder. Appellant grew angry with the victim and threatened her, saying he was going to "get" her. He abruptly left the party, taking Ms. Frierson with him. They returned home, and the beating began. A neighbor, whose apartment shared a common wall with appellant's, testified that she was awakened several times during the night by sounds of appellant and the victim arguing, and by Ms. Frierson's crying and moaning. The neighbor also heard Ms. Frierson

---

[1] The crutch was of the type commonly issued by a nearby hospital. Ms. Frierson had been an outpatient at the hospital some time prior to the events leading up to the killing, and had been issued a pair of the crutches.

scream several times during the night, "O My God, Charles, my stomach." The party guests testified that appellant returned alone to the party approximately an hour and a half after he left with the victim, and boasted that he had "carried her home and kicked her ass," and that they would read all about it in the newspapers. From the testimony of the neighbor it is clear that appellant's return to the party occurred in between two of several episodes of beating that night.

Appellant, testifying on his own behalf, said that at the party he drank three drinks of bourbon and tequila; that when he and Ms. Frierson returned home they argued and he slapped her so hard that she hit her head on the wall; that she responded by hitting him on the nose; and that he slapped her again, she fell down, and everything "went black." He testified that he did recall helping Ms. Frierson up off the floor, but that while carrying her into the bedroom he lost his grip and Ms. Frierson, who was heavyset, "flowed" out of his arms and struck her head on a desk. He denied returning to the party and telling the guests that he had beaten his wife. He also denied striking her with the crutch. He stated that he put Ms. Frierson into bed, went to sleep, and did not call the paramedics until the early afternoon of the next day.

Appellant first contends that it was error for the district court to admit evidence of the victim's pregnancy, and to refuse to give a proposed limiting instruction with respect to that evidence.

Prior to trial appellant made a motion *in limine,* seeking exclusion of any evidence of Ms. Frierson's pregnancy on the ground that it was either irrelevant or, if relevant, its prejudicial effect outweighed its probative value. The court denied the motion and admitted the evidence. Appellant contends that this was error. He argues that since the victim died of injuries to the head, as opposed to the abdominal area, evidence of her pregnancy was irrelevant: ". . . since the victim's pregnancy had nothing to do with the cause of death, evidence of such condition should have been excluded. . . ." Appellant's Opening Brief at 10. Appellant argues in the alternative that if the evidence was relevant, its prejudicial effect on the jury so outweighed its probative value that the court erred in not ordering its exclusion.

Appellant relies on Jacobs v. State, 91 Nev. 155, 532 P.2d 1034 (1975), for the proposition that Ms. Frierson's pregnancy was irrelevant to the issue of guilt. In *Jacobs,* we noted in passing that the pregnancy of a woman killed by a shotgun blast during the holdup of a grocery store was irrelevant, and should not have been placed before the jury. *Jacobs,* however, is easily

distinguishable from the instant case. A firearm usually causes death with sufficient force and trauma to the body that pregnancy might not be relevant to the cause of death.[2] Likewise, the magnitude of force is so great that a special condition causing increased vulnerability to physical force, such as pregnancy, is generally irrelevant to the question of whether the force used was intended to cause death.

This case, however, involves the use of force of a lesser magnitude than a firearm. As appellant was charged with open murder, *see* NRS 200.030, respondent was obligated to prove intent to kill, premeditation, and deliberation in order to obtain a verdict of first degree murder. "Intent to kill, as well as premeditation, may be ascertained or deduced from the facts and circumstances of the killing, such as use of a weapon calculated to produce death, the manner of use, and the attendant circumstances." Dearman v. State, 93 Nev. 364, 367, 566 P.2d 407, 409 (1977); Moser v. State, 91 Nev. 809, 544 P.2d 424 (1975). Whether or not the victim's pregnancy was directly related to the specific medical cause of death, it was clearly relevant to the issues of intent to kill and premeditation; it directly bore on the question of whether the physical force used (repeated blows to various parts of the victim's body) could have been calculated to cause death. We consider that evidence of the deceased's advanced state of pregnancy was relevant in the trial of the first degree or "open" murder case before us, in which the victim was severely beaten.

Although the evidence was relevant, the trial court could nevertheless have ordered it excluded, if the court determined that its prejudicial effect on the jury outweighed its probative value. NRS 48.035. Appellant contends that the court erred in not making such a determination. Our review of the trial court's decision is limited to the question of whether the trial court abused its discretion; absent a clear showing of an abuse of discretion, its ruling will not be disturbed on appeal. Dearman v. State, *supra.* We perceive no such abuse of discretion in the instant case. The trial court did not err in admitting the evidence.

In the same vein, it was not error to refuse appellant's proposed instruction relating to the pregnancy evidence. The

---

[2]We can conceive of circumstances under which the fact of pregnancy could indeed be relevant to the cause of death by gunshot wound. Such relevancy determinations would have to be made on a case-by-case basis, and we express no opinion thereon.

instruction would have told the jury that evidence of Ms. Frierson's pregnancy was only relevant to the issue of whether such a condition would be likely to physically provoke another person. It would have expressly told the jury that such evidence was not admissible as to the issues of malice, premeditation, and deliberation. This instruction inaccurately stated the law, and it was not error to refuse it. Cutler v. State, 93 Nev. 329, 566 P.2d 809 (1977).

Appellant next contends that the trial court erred by refusing to give a proposed instruction that would have informed the jury that a finding of premeditation requires a period of time, however short, during which the accused must premeditate the killing. Absent such an instruction, argues appellant, the jury could have been swayed by the brutality of the crime and returned its verdict without consideration of whether the beating was an impulsive unpremeditated act. He refers us to People v. Anderson, 447 P.2d 942 (Cal. 1968), which holds that the brutality of a killing, standing alone, may not support a finding of premeditation and deliberation.

This contention must fail. In another instruction, the jury was properly and adequately instructed on the length of time necessary for premeditation, see Scott v. State, 92 Nev. 552, 554 P.2d 735 (1976). It is not error to refuse an instruction when the law encompassed therein is adequately covered by another instruction given to the jury. Beets v. State, 94 Nev. 89, 575 P.2d 591 (1978); Geary v. State, 91 Nev. 784, 544 P.2d 417 (1975). Furthermore, as appellant's instruction made no reference to the brutality of the killing, his argument herein is without a factual basis. The court did not err in refusing to give the proposed instruction.

We have considered appellant's remaining assignments of error and find them without merit.

The judgment of conviction is affirmed.

GUNDERSON, C. J., MANOUKIAN, SPRINGER, and MOWBRAY, JJ., and ZENOFF, SR. J.,[3] concur.

---

[3]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to participate in this case, pursuant to Nev. Const., art. 6, § 19; SCR 10.