MARVIN LEWIS DOLEMAN, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 21479

June 6, 1991                                    812 P.2d 1287

[Rehearing denied August 28, 1991]

*Lee Elizabeth McMahon,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Chief Deputy District Attorney, *Thomas L. Leen,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, ROSE, J.:

During a ten-day period, appellant Marvin Lewis Doleman was involved in the robbery and shooting of two cab drivers in Las Vegas. Appellant was convicted of two counts of armed robbery,

one count of attempted murder and one count of murder in the first degree. On the murder conviction, appellant was sentenced to death. On appeal, appellant generally challenges all four convictions and specifically challenges the sentence of death.

On the evening of January 9, 1990, in Las Vegas, a cab driver was shot in the head three times and robbed by two young black males. The cab driver survived the gunshot wounds. On the morning of January 19, 1990, in Las Vegas another cab driver was shot twice in the head and robbed by two young black men. This cab driver died on January 20, 1990, as a result of the gunshot wounds.

On January 19, 1990, based upon information received from an informant, the police believed that appellant and Frederick Paine were involved in the shooting of the two cab drivers and that the two men were staying at the Continental Hotel. Detective Carl Cassell of the Las Vegas Metropolitan Police Department (Metro) testified that he went to the Continental Hotel looking for Paine and appellant because he had been informed that the two men had been identified as suspects in the robbery and shooting of the cab drivers. Cassell also testified that he could not remember who gave him this information. While talking with hotel security guards at the Continental Hotel, Cassell and another detective noticed Paine enter the casino. After Paine sat down in front of a slot machine, the detectives approached him and arrested him. Paine informed the detectives that appellant was in room 3206 of the hotel.

After notifying Metro that he had Paine in custody, Cassell and the other detective went to room 3206 along with two hotel security guards. Paine was left in the custody of another hotel security guard. Without a warrant, the four men then entered room 3206 unannounced with a pass key. Appellant was found in the room and immediately arrested, at which time he stated, "You have got the wrong guy. Freddie did it." After being informed of his rights, appellant stated that Freddie had come to the room earlier that morning with $50.00 from a robbery.

Detective Cassell testified that he decided to enter the room immediately and unannounced because "there was supposed to be an armed and dangerous person who had shot and robbed at least one person earlier that day, the safety of the guests in the hotel had to be considered." He also testified that the fact that they had just learned of appellant's whereabouts made it "a pursuit type immediate follow-up situation" and it was also Friday afternoon which means it was "very difficult to reach certain members of the system." Cassell was also concerned about the existence of a weapon in the room. He stated that they

went in unannounced so that they would not "further arm or alarm the person inside." Cassell testified that he believed that prior to entering the room he asked Paine where the gun was, and Paine told him it was in the room.

Appellant first contends that his arrest was illegal and that, therefore, all evidence obtained as a result of the arrest was improperly admitted at trial. Appellant was arrested in his hotel room without a warrant. The fourth amendment to the United States Constitution forbids unreasonable searches and seizures. Warrantless searches and seizures in a home are presumptively unreasonable. Payton v. New York, 445 U.S. 573, 587 (1980).[1] However, warrantless searches are permitted if based upon both probable cause and exigent circumstances. *Id.* at 588-590.

Appellant maintains that police lacked probable cause to arrest him and that there was no exigent circumstance to justify entry into his hotel room. Based upon this, appellant argues that all evidence subsequently acquired must be suppressed. We disagree.

Probable cause to conduct a warrantless arrest exists when police have reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed by the person to be arrested. Beck v. Ohio, 379 U.S. 89, 91 (1964); Brinegar v. United States, 338 U.S. 160, 175-176 (1949); Carroll v. United States, 267 U.S. 132, 162 (1925).

Appellant argues that the police officer's decision to enter the hotel room and arrest him was not based upon valid information. He contends that there was no evidence to connect him or Paine with the shooting of the cab drivers. Appellant further contends that, because the police officer could not remember who told him that appellant and Paine were involved in the second shooting, he did not have sufficient evidence to arrest appellant.

Probable cause is not based on the knowledge of a specific police officer but is "based on the collective knowledge of all the officers involved." United States v. Briley, 726 F.2d 1301, 1305 (8th Cir. 1984) (*citing* United States v. Rose, 541 F.2d 750, 756

---

[1]In United States v. Diaz, 814 F.2d 454 (7th Cir. 1987), *cert. denied,* 484 U.S. 857 (1987), it was made clear that the rule from *Payton* applies to hotel rooms as well as private homes.

(8th Cir. 1976), *cert. denied,* 430 U.S. 908 (1977)). In the instant case there were numerous facts and circumstances known to the police which linked appellant to the crimes.

First, because of the similarity between the two shooting-robberies, it was logical for the police to suspect that the crimes were committed by the same men. The police knew that two young black men were involved in the January 9 incident, and they knew that two young black men had been seen at the scene of the January 19 incident.

An informant, who knew Paine and appellant through a mutual acquaintance, told the police on January 18, 1990, that she suspected that Paine and appellant were involved in the January 9 shooting based upon the two locations involved and the fact that she connected Paine and appellant with the locations. On January 19, 1990, after the second shooting, the police obtained positive identifications of both Paine and appellant, connecting them with the shootings. Appellant was identified by a witness who had seen him in the vicinity of the second shooting at the time of the shooting.

After arriving at the Continental Hotel, the place where the second cab driver picked up his last ride, the police saw Paine enter the casino. After being arrested Paine informed the police that appellant was in a room in the hotel. This confirmed that Paine and appellant were associates and that they were at the place where the second cab driver picked up his last ride.

Although Detective Cassell may not have been specifically aware of each and every one of these facts, collectively the police involved in this investigation were aware of sufficient facts and circumstances to warrant a person of reasonable caution to believe that a crime had been committed and that appellant had participated in its commission. The police did possess probable cause to arrest appellant.

For the arrest of appellant in his hotel room to be justified it must also be found that exigent circumstances existed at the time of arrest. Exigent circumstances are "those circumstances that would cause a reasonable person to believe that entry (or other relevant prompt action) was necessary to prevent physical harm to the officers and other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." United States v. MaConney, 728 F.2d 1195, 1199 (9th Cir. 1984) (en banc) *cert. denied,* 469 U.S. 824 (1984); *see also* United

States v. Good, 780 F.2d 773, 775 (9th Cir. 1986) (*citing* United States v. Manfredi, 722 F.2d 519, 522 (9th Cir. 1983)).

In the instant case, Detective Cassell testified that he believed there was an armed and dangerous man in the room that had shot and robbed at least one person that day. He stated that he was concerned about the existence of a weapon in the room and about the safety of the other hotel guests. Cassell also testified that he did not attempt to obtain a warrant because it was around 5:00 p.m. on Friday afternoon, and it would have been very difficult to obtain a warrant at that time.

A recognized exigent circumstance in Nevada is "the reasonable belief that there is an urgent need to pursue an investigation which involves a substantial and imminent threat of death or bodily injury." Johnson v. State, 97 Nev. 621, 624, 637 P.2d 1209, 1211 (1981). This exigent circumstance was first recognized in State v. Hardin, 90 Nev. 10, 518 P.2d 151 (1974), in which the police, after learning that a murder suspect had entered a particular hotel room, entered the room with a pass key after knocking on the door elicited no response. Various evidence of the murder was found in the room and eventually found to be admissible by this court based upon the fact that the violent homicide reasonably justified fears that the suspect posed a substantial threat of imminent harm to others. *Id.* at 15-16, 518 P.2d at 154.

Exigent circumstances were also found in Banks v. State, 94 Nev. 90, 575 P.2d 592 (1978). In *Banks,* police, while in pursuit of armed robbery suspects, entered an apartment where they had reason to believe the suspect and a weapon were located. They entered after seven people had come out of the apartment; none of them armed. This court concluded that the "police had ample grounds . . . for the belief that urgent action was necessary to investigate and possibly prevent a substantial threat to their own safety as well as that of others in the vicinity." *Id.* at 97, 575 P.2d at 596.

In Koza v. State, 100 Nev. 245, 681 P.2d 44 (1984), we again found exigent circumstances. In *Koza,* police had information that the occupants of a hotel room possessed a gun and were planning a robbery. Police observed the room and saw a man leave the room and then return with a woman. The police knocked on the door and said that they wished to question the occupant, at which point they heard the sliding action of an automatic weapon. Eventually the man and woman exited the room. The police then entered the room to insure that there was not another person in the room who could use the unaccounted-for weapon. In the room, police found a weapon in plain view.

We held that "under those circumstances the officers had reasonable grounds to believe that another accomplice might still be in the room and that an urgent need existed to preserve the life of a possible robbery victim or their own lives." *Id.* at 253, 681 P.2d at 49.

Based upon the relevant Nevada case law, exigent circumstances did exist in the instant case. The police had a reasonable belief that appellant was in the hotel room and had possession of the weapon used in the two shootings. It was reasonable for the police to believe that quick action was necessary in order to prevent possible danger as a result of appellant still being in possession of the gun.

Because the police possessed probable cause and because exigent circumstances existed, the arrest of appellant was proper. The evidence discovered subsequently was correctly admitted at trial.

Appellant next contends that the trial court erred in denying his motion for a continuance in order to contact certain witnesses. It is well settled that the granting of a motion to continue is within the sound discretion of the trial court. McCabe v. State, 98 Nev. 604, 655 P.2d 536 (1982); Johnson v. State, 90 Nev. 352, 526 P.2d 696 (1974). When a motion to continue is brought for the purpose of producing a witness, the trial court is to consider whether the facts can be proven by another available witness. *Banks,* 101 Nev. at 773, 710 P.2d at 725.

The facts sought to be proven through the testimony of the absent witnesses were not essential to appellant's defense. Also, neither of the witnesses' full names nor their locations were known to defense counsel. Even if the alleged witnesses had been found, their testimony would not have exculpated appellant. Under the rationale of *Banks* the trial court did not abuse its discretion in denying appellant's motion for a continuance.

Appellant also contends that the trial court erred in not giving appellant's proposed jury instruction with respect to "mere presence." A jury instruction was given on the subject of "mere presence." The only difference between the instruction given and appellant's proposed instruction was that the proposed instruction included the word "even" while the instruction given did not. It is not error for a court to refuse an instruction when the law in that instruction is adequately covered by another instruction given to the jury. Givens v. State, 98 Nev. 573, 578, 655 P.2d 533, 536 (1978) (citations omitted). The instruction actually

given adequately covered the law with respect to "mere presence," therefore the trial court did not err in failing to give appellant's proposed instruction.

Finally, appellant maintains that the death penalty was improperly imposed because errors were made with respect to the penalty phase of his trial. We agree that one error occurred at the penalty phase, this being that no culpability determination was made as to appellant's involvement in the killing. While the requisite culpability determination was not made by the jury or the district court, we conclude that we can make this determination from the record in this case and have done so in the course of our review.

The United States Supreme Court has held that it is improper under the eighth amendment to impose the death penalty on one who "does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." Enmund v. Florida, 458 U.S. 782, 797 (1981). In *Enmund,* the Court overturned a death sentence for felony murder because there was no proof that Enmund possessed the degree of culpability warranting the death penalty. *Id.* at 801. In Tison v. Arizona, 481 U.S. 137 (1987), the Court discussed *Enmund,* holding that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement." *Id.* at 158.

The jury was instructed on various theories of first degree murder including premeditation and felony murder.[2] The jury was also instructed on aiding and abetting with respect to all felonies.[3] Appellant contends that because no special verdicts were given to the jury the *Enmund* determination of culpability was never made. This *Enmund* determination can be made at any point, and the determination need not be made by the jury. Cabana v. Bullock, 474 U.S. 376, 386-387 (1986). Relying upon *Cabana,* the State argues that the jury need not make the *Enmund* determi-

---

[2]Jury Instruction No. 17 provides: "Murder of the first degree is murder which is (a) perpetrated by any kind of willful, deliberate and premeditated killing, or (b) committed in the perpetration or attempted perpetration of a Robbery."

[3]Jury Instruction No. 27 provides:

Every person concerned in the commission of a felony, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who, directly or indirectly, counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony is a principal, and shall be proceeded against and punished as such.

nation. The State also insists that there is sufficient evidence for this court to make the *Enmund* determination.[4]

Although we here emphasize our preference that culpability decisions be made by juries based upon the trial evidence rather than on appellate review of a cold record, we have no reservation about making the culpability determination in this case. To receive the death sentence, appellant must have, himself, killed, attempted to kill, intended that a killing take place, intended that lethal force be employed or participated in a felony while exhibiting a reckless indifference to human life. The record contains ample evidence that appellant possessed a reckless disregard for human life when he participated in the robbery-shooting on January 19, 1990, and that he intended a killing to take place. He obtained the weapon which was used in both shootings. He actively participated in both robberies, apparently acting as a shill in the robbery of January 19. Because the second robbery was so similar to the first and appellant knew Paine had used deadly force in the prior crime, it is obvious that appellant was aware that deadly force would be used in the perpetration of the January 19th robbery. Therefore, we conclude that appellant was an integral part of the crimes committed on January 19, 1990, and directly culpable in the killing of Kenneth Marcum.

Whenever the sentence of death is imposed, this court must review whether the sentence is excessive considering both the crime and the defendant. NRS 177.055(2)(d). We conclude that, given the appellant and the facts of this crime, the imposition of the death sentence was not excessive.

Accordingly, we affirm appellant's convictions and the sentence of death imposed on him.

MOWBRAY, C. J., STEFFEN and YOUNG, JJ., concur.

SPRINGER, J., concurring in part, and dissenting in part:

I join in the majority's opinion with respect to the guilt phase, but I cannot agree with the court's conclusion regarding the penalty phase of this case. Under Enmund v. Florida, 458 U.S. 782, 797 (1981), a *factual* determination must be made in every death penalty case as to defendant's culpability. This court is not in the fact-finding business, and thus I would never allow a

---

[4]The State makes this contention on page 46 of its reply brief, as follows:

The Defendant's claim that the lack of an *Enmund* determination by the jury was unconstitutional is clearly contrary to *Cabana*, and should be rejected. If this Court looks to the facts of the case, it is apparent that the Defendant possessed a reckless disregard for human life when he participated in the robbery-shooting of January 19, 1990.

culpability determination to be made on appeal. Even if I were willing to make culpability determinations on appeal, however, I would not be willing to do so in this case. Despite the majority's assertion to the contrary, Doleman's culpability was not "obvious." Appellant did not pull the trigger, and indeed, may not have even been present at the time of the shooting. Such a close factual issue should not be determined summarily on the basis of a lifeless record, but rather should be decided at the district court level, where questions of fact are generally adjudicated. Accordingly, I would remand this case for a new penalty hearing in which Doleman's culpability would be addressed by an appropriate finder of fact.