GEORGE W. LUSTER, JR., Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 32449

December 28, 1999

991 P.2d 466

*Morgan D. Harris,* Public Defender, and *Robert L. Miller* and
*Scott Coffee,* Deputy Public Defenders, Clark County, for
Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart
L. Bell,* District Attorney, *James Tufteland,* Chief Deputy District
Attorney, and *William Hehn,* Deputy District Attorney, Clark
County, for Respondent.

Before ROSE, C. J., MAUPIN and SHEARING, JJ.

# OPINION

*Per Curiam:*

## SUMMARY

George W. Luster, Jr. ("Luster") contends that evidence obtained from his home implicating him in a kidnapping was improperly admitted at trial because the evidence was not within the scope of the search warrant the police were executing at the time the evidence was seized. The search warrant issued covered a search for evidence concerning Luster's involvement in a murder investigation, which was later linked to the kidnapping. At an evidentiary hearing before Luster's trial for both crimes, the district court concluded that the evidence seized was properly obtained within the plain view doctrine. We agree with the district court ruling and affirm the judgment below.

## FACTS

In June 1995, Tamara Campos ("Campos"), a resident of Las Vegas, allegedly took between $20,000.00 and $200,000.00 from Luster, her ex-boyfriend. With her sons Adam and Joey, Adam's girlfriend Erica Meyers ("Meyers"), and her mother, Campos traveled to Mt. Charleston in a blue van she had recently purchased. During the trip, Meyers was arrested for giving false information to a police officer and was eventually released to her half-brother Robert Humphreys ("Humphreys"). After staying with Humphreys for a few days, Meyers and the Campos family left Las Vegas again in a white automobile, which Campos had obtained after exchanging the blue van with Jose "Tito" Quijada ("Quijada").

On the evening of June 25, 1995, a few days after Meyers had left on her second trip with the Campos family, Humphreys was abducted by a man he later identified as Luster. Humphreys testified that he was led out of his house, held at gunpoint, forced into a car by the abductor and another individual, and driven away

to an unidentified home. To prevent Humphreys from escaping or being able to identify his location, the abductors handcuffed Humphreys and covered his head in a pillowcase-type covering, which was then wrapped with duct tape. After being questioned repeatedly about Campos' whereabouts, Humphreys was driven to a second house. Although he was handcuffed and had his head mostly covered, Humphreys testified that he was able to observe that the second house had a dirt yard, tile flooring, a staircase, and blue carpeting. In an upstairs room of the house, one of the abductors removed the pillowcase where Humphreys observed a large container of birdseed in the room. Eventually, the abductors released Humphreys by leaving him tied up in his pickup truck outside of a store.

On July 10, 1995, at approximately 9:00 a.m., Quijada, who had traded his white car for Campos' blue van, was shot and killed outside of his workplace by a man witnesses and investigators later identified as Luster. An autopsy of Quijada revealed that he had been shot approximately eleven times with a .40 caliber gun.

Based on the eyewitness accounts of the incident and the information regarding the weapon used, police obtained a search warrant for Luster's house to seize a .40 caliber semi-automatic handgun, a dark blue shirt, a pair of khaki shorts or pants, a black cap, any documents identifying Luster's location on July 10, 1995, and any documents identifying the person in control of the premises.

In a pretrial evidentiary hearing, the officer investigating Quijada's murder Detective Roy Chandler ("Det. Chandler") testified that prior to executing the search warrant, he had been told of Humphreys' kidnapping and that Luster was a suspect in that investigation. Det. Chandler stated specifically that before the warrant was executed, he had read some of the kidnapping reports and obtained from the detective in charge of the kidnapping investigation a description of the house in which Humphreys was held.

At approximately 9:00 a.m. on July 15, 1995, the police executed the search warrant of Luster's residence. Luster was not home at the time. Det. Chandler, who was present at the search, stated that he immediately recognized the similarities between Luster's house and the one Humphreys had described. Therefore, he instructed photographs to be taken of everything inside. During the execution of the warrant, police discovered and seized a 12-gauge shotgun, a gun clip, several rolls of duct tape, and a duffel bag containing 12-gauge shotgun shells, a box of 9mm ammunition, an ammunition clip, and an additional roll of duct tape. Police also photographed an upstairs room in which a plastic container of birdseed was found.

During the search, Luster contacted the police and explained that he wanted to turn himself in. Det. Chandler left the search to meet with Luster, who then signed a consent for the police to search his home. In Luster's evidentiary hearing, the district court determined that this consent was given later than the actual seizure of the evidence.

On January 29, 1996, the State charged Luster with numerous crimes including first degree murder with the use of a deadly weapon and first degree kidnapping with the use of a deadly weapon.

On September 23, 1996, Luster moved to suppress the evidence the police had seized that was beyond the scope of the warrant, claiming that such evidence pertained to the kidnapping charge, and was therefore unconstitutionally obtained as part of a warrantless search.

On January 20, 1998, the district court conducted an evidentiary hearing regarding Luster's motion and concluded that the evidence, although it had been seized prior to Luster's consent, was still lawfully obtained. Further, the district court found that the photographs were taken in the course of a proper police investigation. Accordingly, the district court denied Luster's motion to suppress.

At trial, the jury found Luster guilty on all counts. Luster now appeals claiming in part that the district court erred in denying his pretrial motions to suppress evidence.

## DISCUSSION

Luster contends that the district court erred in denying his motion to suppress the seized evidence that exceeded the scope of the search warrant.[1] We conclude that the evidence was lawfully obtained under the plain view doctrine, and was therefore properly admitted by the district court.

The plain view doctrine announced by the Supreme Court of the United States in Coolidge v. New Hampshire, 403 U.S. 443 (1971), allows the seizure of objects not specified in a search warrant so long as certain criteria are met: (1) the initial intrusion of the police must be lawful; (2) the police must ''inadvertently'' discover the incriminating evidence; (3) it must be ''immediately

---

[1]Luster further contends that the district court erred in denying his motion to dismiss counts, suppress fingerprint evidence, or give a jury instruction regarding the State's failure to preserve the water bottle evidence; and in failing to give jury instructions that adequately distinguished between premeditation/deliberation and malice aforethought. We have considered Luster's arguments and conclude that they are without merit.

apparent'' to the police that the items they observe may be evidence of a crime. *See* Koza v. State, 100 Nev. 245, 253-54, 681 P.2d 44, 49 (1984) (applying the *Coolidge* test); *see also* Johnson v. State, 97 Nev. 621, 624, 637 P.2d 1209, 1211 (1981). Because the parties do not contest the first two criteria, the focus of our discussion is on the ''immediately apparent'' requirement.[2]

This court has recognized that the ''immediately apparent'' requirement should not be interpreted too strictly, since '' 'it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary.' '' *Koza,* 100 Nev. at 254, 681 P.2d at 49-50 (quoting Texas v. Brown, 460 U.S. 730, 741 (1983)). The proper interpretation of the requirement is that the seizure of property in plain view is '' 'presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.' '' *Id.* at 255, 681 P.2d at 50 (emphasis omitted) (quoting Payton v. New York, 445 U.S. 573, 587 (1980)).

In the instant case, there was probable cause to associate the evidence with criminal activity, thus satisfying the ''immediately apparent'' requirement.[3] Probable cause existed because prior to the execution of the search warrant, the police had knowledge of Humphreys' kidnapping and were aware of Luster's possible involvement therein. Further, during the execution of the warrant, the police realized that the house matched Humphreys' description and properly concluded that it might contain evidence pertaining to Humphreys' kidnapping. Finally, the evidence obtained was likely associated with the kidnapping, which Humphreys stated involved being held at gunpoint and bound with duct tape. Accordingly, we conclude that the evidence seized from Luster's home regarding his involvement in the kidnapping was lawfully obtained and that the district court properly admitted such evidence at trial.

---

[2]We note that in Horton v. California, 496 U.S. 128 (1990), the Supreme Court of the United States held that the ''inadvertent discovery'' requirement of the plain view doctrine was unnecessary. However, because this requirement is not at issue in this case, we need not address it.

[3]The Supreme Court of the United States has held that probable cause in the context of the plain view doctrine ''merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false.'' *Brown,* 460 U.S. at 742 (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)).

## CONCLUSION

We conclude that the district court did not err in admitting evidence regarding Luster's involvement in a kidnapping obtained by police during the execution of a search warrant relating to a murder investigation because the police had probable cause to associate the evidence with criminal activity. Accordingly, we affirm the judgment of the district court.