OPINION
 

 By the Court,
 

 Maupin, J.:
 

 FACTS
 

 This matter arises from a successful undercover drug enforcement operation and interdiction. Utilizing an informant, police effected a “controlled buy” or purchase of illegal drugs at an apartment in which appellant, Darren Maurice King, was residing. Based on the successful completion of the drug purchase, police obtained a search warrant for the same residence. While executing the search warrant later that evening a gun battle
 
 *353
 
 ensued. Once the gunfire subsided, police entered the residence and arrested King.
 

 King was tried in district court before a jury and convicted of two counts of trafficking in a controlled substance, three counts of attempted murder with the use of a deadly weapon, and one count of discharging a firearm at or into a structure. King appeals from the judgments entered upon these convictions.
 

 King raises several issues on appeal, none of which warrant reversal: (1) whether the State’s peremptory challenge of the sole African-American venireperson violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; (2) whether the district court improperly admitted prior bad act evidence; (3) whether the district court erroneously failed to give a cautionary jury instruction regarding the credibility of an addict-informant; (4) whether the prosecutor improperly vouched for the credibility of a witness; (5) whether a search warrant was executed in such a dangerous manner as to render the search unreasonable under the Fourth Amendment to the United States Constitution; and (6) whether the district court erroneously denied King’s motion to dismiss, which was premised on the State’s failure to present allegedly exculpatory evidence to the grand jury.
 
 [1]
 

 DISCUSSION
 

 1. King asserts that the district court erred by permitting the State to use its fifth peremptory challenge to strike the only African-American venireperson in the jury pool.
 

 In Batson v. Kentucky, 476 U.S. 79 (1986), the United States Supreme Court held that the Equal Protection Clause of the United States Constitution forbids utilizing a peremptory challenge to exclude a juror on the basis of race. In Purkett v. Elem, 514 U.S. 765, 767 (1995), the Court outlined the steps required for a
 
 Batson
 
 challenge. First, the opponent of a peremptory challenge must demonstrate a prima facie case of racial discrimination. Second, the burden shifts to the proponent of the challenge to express a race-neutral explanation for the challenge. Third, the district court must determine whether the explanation was a mere pretext and whether the opponent successfully proved racial discrimination. If these issues are resolved in favor of the proponent, the constitutional attack on the peremptory challenge is rejected.
 
 See
 
 Hernandez v. New York, 500 U.S. 352, 359 (1991).
 

 
 *354
 
 Here, the State opposed the
 
 Batson
 
 objection to the peremptory challenge by representing that the prospective juror in question was stricken because of her youth and inexperience. The reasons given by the State were race neutral and properly considered by the district court. Accordingly, we must consider whether the race-neutral explanation was merely a pretext for racial discrimination.
 

 A review of the jury selection transcript demonstrates that no other venireperson was impaneled who displayed the characteristics for which the stricken venireperson was dismissed.
 
 See
 
 Turner v. Marshall, 121 F.3d 1248 (9th Cir. 1997). We therefore conclude that King has failed to demonstrate on appeal that a Fourteenth Amendment Equal Protection violation occurred based on the peremptory challenge of the sole African-American venireperson.
 

 2. King next contends that the admission of prior bad act testimony constitutes reversible error. We disagree.
 

 During King’s trial, the informant who participated in the controlled contraband purchase testified that he had previously-acquired illegal drugs from King approximately twenty-five to thirty times. This information was set forth in the application and affidavit utilized to obtain the search warrant. The State also referred to this evidence in its closing argument.
 

 King submits that this testimony was improperly admitted contrary to NRS 48.045, which provides that evidence of a person’s character may not be admitted for the purpose of proving that the person acted in conformity therewith on a particular occasion. King also argues that the failure to conduct a hearing prior to the admission of the testimony pursuant to Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985), constitutes reversible error.
 

 Failure to conduct a
 
 Petrocelli
 
 hearing on the record is grounds for reversal on appeal unless either the record is sufficient for this court to determine that the evidence is admissible under the test for admissibility of bad act evidence as set forth in Tinch v. State, 113 Nev. 1170, 1176, 946 P.2d 1061, 1064-65 (1997),
 
 [2]
 
 or where the result would have been the same had the district court not admitted the evidence. Qualls v. State, 114 Nev. 900, 902, 961 P.2d 765, 766-67 (1998).
 

 
 *355
 
 We conclude that the district court’s failure to conduct a
 
 Petrocelli
 
 hearing prior to admission of the prior drug transactions involving King does not give rise to reversible error. The evidence in question was relevant to the identification of King and lack of mistake pursuant to NRS 48.045(2).
 
 [3]
 
 Further, the record is sufficient for this court to determine that the remaining
 
 Tinch
 
 factors for admissibility have been met. Finally, in the alternative, we conclude that the result would have been the same had the district court not admitted the testimony because King’s guilt is supported by overwhelming evidence.
 
 [4]
 

 3. King also contends that the district court erred in failing to give a cautionary jury instruction regarding the credibility of an addict-informant. In support of this contention, King relies on Champion v. State, 87 Nev. 542, 490 P.2d 1056 (1971).
 

 In
 
 Champion,
 
 the State conceded that a proper cautionary instruction concerning an addict-informer’s testimony was central to the case.
 
 Champion,
 
 87 Nev. at 544, 490 P.2d at 1057. The finding was based on the State’s admissions that the utilized addict-informer was “about as unreliable an addict-informer as you can have,” and that the addict-informer’s unreliability was commonly known.
 
 Id.
 
 In
 
 Champion,
 
 the State further conceded that, aside from the addict-informer’s testimony, there was ‘ ‘nothing to show that the [drugs] were turned over to [the addict-informer] and received from [the defendant].” Id. at 543-44, 490 P.2d at 1056.
 

 Champion
 
 is distinguishable because the informant in this matter was not known to be or deemed unreliable. First, a Las Vegas Metropolitan Police Department detective testified that he did not know the informant until just prior to the events at issue. Second, the informant was proved reliable during the prior controlled acquisitions of contraband. Third, the events surrounding the arrest clearly demonstrated the reliability of information generated from the informant. Thus, there was substantial evidence against King to corroborate the informant’s testimony. Additionally, the
 
 *356
 
 jury was instructed on the relevance of felony convictions sustained by witnesses and inducements offered in connection with certain testimony to the resolution of credibility issues.
 
 See
 
 Doleman v. State, 107 Nev. 409, 415, 812 P.2d 1287, 1290 (1991).
 

 4. King asserts that the State improperly vouched for the credibility of certain witnesses as follows:
 

 Ladies and gentlemen, I suspect if you want to consider the defense’s argument, then this whole case is a lie and Mr. Lalli and I stand right here now and we present to you a lie. We are involved in it as well.
 

 We came in here, we presented all the evidence that was presented to us all the way down from Sheriff Keller himself.
 

 The whole police force is involved in a lie in a big conspiracy to go after this man right here? The whole police force wants to bring something to light that they are so dirty they want this man right here that they are willing to create such an elaborate, as she says, story? Big story that we write an ending to?
 

 If you want to believe that, then believe it. And find him not guilty because the whole police force is dirty and they are terrible and every time you want to get a dangerous drug dealer off the street the police force is involved in it. . . .
 

 But ladies and gentlemen, I don’t mean to. I hope I didn’t offend the jury. I get a little upset about the fact that our police officers are being put up here and then told— jurors are told that they are liars. That’s basically what happened here.
 

 “A criminal conviction is not to be lightly overturned on the basis of a prosecutor’s comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor’s conduct affected the fairness of the trial.”
 
 See
 
 United States v. Young, 470 U.S. 1, 11 (1985). If the issue of guilt or innocence is close, and if the State’s case is not strong, prosecutoriál misconduct will probably be considered prejudicial.
 
 See
 
 Garner v. State, 78 Nev. 366, 374, 374 P.2d 525, 530 (1962). However, where evidence of guilt is overwhelming, even aggravated prosecutorial misconduct may constitute harmless error.
 
 See
 
 Jones v. State, 113 Nev. 454, 467, 937 P.2d 55, 64 (1997).
 

 We conclude that the comments made by the State were, at least
 
 *357
 
 in part, improper. However, any error was harmless in light of the overwhelming evidence of King’s guilt.
 
 [5]
 

 5. King asserts that night-time execution of the search warrant and the use of a shotgun
 
 [6]
 
 to blow open a locked iron gate securing King’s residence offended constitutional standards of reasonableness, thus vitiating the legality of the accompanying search. King also alleges that officers failed to knock and announce their presence prior to executing the search warrant in violation of NRS 179.055 (providing that an officer may break into a house to execute a warrant if refused admittance after notice of his authority and purpose).
 

 We conclude that the search warrant was not executed in an unreasonable manner. In Sanchez v. State, 103 Nev. 166, 169, 734 P.2d 726, 728 (1987), this court held that “[a]bsent an abuse of discretion, a magistrate’s finding of a reasonable necessity for night-time service should not be disturbed.” This is based on the premise that controlled substances may dissipate through nighttime sales and an informant’s purchase money could be spent prior to the execution of a warrant.
 
 Id.
 

 The search warrant in this case provides, “You are hereby commanded to search forthwith said premises for said property,
 
 serving this warrant at any hour of the day or
 
 night. . . .” (Emphasis added.) The affidavit in support of the search warrant and testimony below indicated that five people, within ten minutes, entered and left King’s apartment for the purpose of purchasing drugs. Thus, we conclude that the district court did not abuse its discretion by directing the warrant to be executed at any time of the day or night. Accordingly, the timing of the execution of the search warrant in this case was not unreasonable.
 

 Officers also testified that the residence was secured with bars on the windows and an iron gate or security door, which made the residence difficult to penetrate. Due to the structural fortification of the residence, as well as information that persons within it were armed and dangerous, the use of a shotgun to penetrate the iron gate or security door that was protecting the front entrance of the residence was not unreasonable.
 
 [7]
 

 
 *358
 
 We further conclude that the Nevada “knock and announce” statute, NRS 179.055,
 
 [8]
 
 was not violated. Several of the officers at the scene testified that they announced their presence by yelling something to the effect of “Police officer. Search warrant,” prior to penetrating the premises. Immediately thereafter, shots were fired from the interior of the residence. We therefore hold that, under the circumstances of this case, the officers substantially complied with NRS 179.055 and properly entered the apartment under exigent circumstances to execute the warrant.
 
 See
 
 United States v. Fox, 790 F. Supp. 1487 (D. Nev. 1992) (holding that non-compliance with NRS 179.055 was justified where compliance with statute would have placed officers in great physical peril).
 

 6. King contends that the State failed to present exculpatory evidence to the grand jury contrary to NRS 172.145.
 
 [9]
 
 More specifically, King contends that the State failed to present statements of four persons who were inside the residence at the time the search warrant was executed. These statements purportedly indicated that the police failed to knock and announce their presence prior to entry. King asserts that he would not be guilty of attempted murder if it was established that he had been in reasonable fear for his life due to the police officers’ failure to knock and announce their presence.
 

 
 *359
 
 Nevada law requires a prosecutor to disclose to the grand jury all exculpatory evidence.
 
 See
 
 Lay v. State, 110 Nev. 1189, 1197, 886 P.2d 448, 453 (1994). Exculpatory evidence is defined as evidence that will explain away the charge.
 
 Id.
 

 Assuming that the provisions of NRS 172.145(2) were violated by the State’s failure to present the testimony of the four individuals to the grand jury, in light of the overwhelming evidence against King, we conclude that violation does not compel reversal.
 
 [10]
 

 See
 
 NRS 178.598; Chapman v. California, 386 U.S. 18, 24 (1967).
 

 Having reviewed all other issues raised in this appeal and finding them to be without merit, we hereby affirm the judgment below.
 

 Shearing and Becker, JJ., concur.
 

 [1]
 

 King raised several other issues on appeal given consideration by this court, all of which were found to be without merit.
 

 [2]
 

 The
 
 Tinch
 
 factors include a determination of (1) whether the evidence is relevant to the crime charged; (2) whether the other act is proven by clear and convincing evidence; and (3) whether the probative value of the other act is substantially outweighed by the danger of unfair prejudice.
 
 See Tinch,
 
 113 Nev. at 1176, 946 P.2d at 1064-65.
 

 [3]
 

 NRS 48.045(2) provides:
 

 Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 

 [4]
 

 King was found within the immediate proximity of various narcotics paraphernalia, substantial amounts of cocaine, and within reach of a weapon that could not be excluded as having fired projectiles recovered from the crime scene. There was also testimony that King was responsible for shooting at the officers. Finally, the informant identified King as his supplier.
 

 [5]
 

 See
 
 note 4.
 

 [6]
 

 The shotgun in question is also known as a “shot lock” or a “street sweeper.” This device is actually a modified shotgun designed to penetrate locks and force them open.
 

 [7]
 

 To support the proposition that the use of the “street sweeper” is unreasonable, King cites Langford v. Superior Court, 729 P.2d 822 (Cal. 1987).
 
 *358
 
 However, in
 
 Langford,
 
 officers penetrated a suspected crack house utilizing a motorized battering ram that was determined to be unreasonably dangerous based on its potential ability to collapse building walls and ceilings, rupture utility lines, cause fire through the damage of electrical wires or gas lines, and threaten the safety of not only occupants of a dwelling, but an entire neighborhood. No such dangers have been alleged through the use of the “street sweeper” in this case, which was evidently used to penetrate the lock with minimal risk to dwelling occupants.
 

 [8]
 

 NRS 179.055 provides, in part:
 

 1. The officer may break open any outer or inner door or window of a house, or any part of the house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance.
 

 3. All reasonable and necessary force may be used to effect an entry into any building or property or part thereof to execute a search warrant. In the execution of the warrant, the person executing it may reasonably detain and search any person in the place at the time in order to protect himself from attack or to prevent destruction, disposal or concealment of any instruments, articles or things particularly described in the warrant.
 

 [9]
 

 NRS 172.145(2) provides that “[i]f the district attorney is aware of any evidence which will explain away the charge, he shall submit it to the grand jury.”
 

 [10]
 

 King was clearly allowed to present that evidence for consideration by the jury at trial.