# IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL ANDREW KELLY, A/K/A
MICHAEL ANDREW KELLEY,
Appellants,
vs.
THE STATE OF NEVADA,
Respondent.

No. 67966

FILED

JUL 25 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____S. Young_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of third-offense DUI. Fourth Judicial District Court, Elko County; Alvin R. Kacin, Judge.

Officers arrived at appellant Michael Andrew Kelly's residence after a citizen's report of Kelly's alleged drunk driving. After twice receiving consent to search Kelly's residence from Kelly's girlfriend, and finding nothing within the residence, officers tracked Kelly down to a shed in Kelly's backyard. Officers ordered Kelly out of the shed at gunpoint. Following several failed field sobriety tests, Kelly was arrested for felony DUI. After a three-day jury trial, Kelly was convicted of a category B felony and sentenced to serve a prison term of 19 to 48 months.

On appeal, Kelly argues the police illegally searched his carport, car, and shed, and the district court erred in admitting evidence stemming from the warrantless searches. Additionally, Kelly argues his arrest was unlawful. We conclude that the search of Kelly's carport, car, and shed were lawful and the district court did not err in admitting

17-24538

evidence stemming from those searches. We also conclude that Kelly's arrest was lawful. Accordingly, we affirm the judgment of conviction.

## FACTS AND PROCEDURAL HISTORY

On May 29, 2014, Kailee and Kimberli Church observed Kelly drinking a beer while driving and swerving into oncoming traffic. The Churches called the police and followed Kelly to his residence where he parked his Jeep under a carport, exited with a beer in his hand, and went into the residence. A female passenger, Meghan Askins, also exited the vehicle and eventually went inside.

When Officer Hildreth arrived, he spoke with the Churches, who described their account of events. Hildreth eventually made contact with Askins by opening a door to Kelly's Jeep.[1] Askins, who was in the back seat of the Jeep, informed Hildreth that she and her boyfriend, Kelly, lived in the residence, had been drinking, and had been in the vehicle. Askins gave consent to search the residence for Kelly. Hildreth searched the residence but found no one. Meanwhile, Officer Gustafson arrived with information that Kelly was on probation.[2] Upon Gustafson's arrival, the two officers once more received consent to search the residence and again found no one.

The officers were in the carport when Gustafson heard noises coming from a nearby shed located a couple of feet from the residence and

---

[1] It is unclear from the record when Askins re-entered the Jeep.

[2] Kelly was on probation for felony possession of a controlled substance at the time of his arrest. Kelly's probation terms included an intoxicants clause that read, "You shall not consume alcoholic beverages whatsoever."

behind the carport. After grabbing the shed door and noting that it felt as if it was being held shut, the officers drew their guns and repeatedly ordered Kelly to come out of the shed. After Kelly opened the door slightly, Hildreth opened the door more and Gustafson restrained Kelly.

During the ensuing DUI investigation, the Churches, who remained on the scene during the search, identified Kelly as the driver of the Jeep. Kelly subsequently underwent field sobriety testing, failed a preliminary breath test, and was arrested for DUI.

Kelly filed a pretrial motion to suppress.[3] The district court denied the motion. After a three-day jury trial, Kelly was convicted of a category B felony and sentenced to serve a prison term of 19 to 48 months.

## DISCUSSION

### Standard of review

"Suppression issues present mixed questions of law and fact." *Johnson v. State*, 118 Nev. 787, 794, 59 P.3d 450, 455 (2002), *overruled on other grounds by Nunnery v. State*, 127 Nev. 749, 772, 263 P.3d 235, 250-51 (2011). "This court reviews findings of fact for clear error, but the legal consequences of those facts . . . [are] review[ed] de novo." *State v. Beckman*, 129 Nev. 481, 486, 305 P.3d 912, 916 (2013).

### Officers' search and seizure of Kelly was lawful

The Fourth Amendment forbids "unreasonable searches and seizures." U.S. Const. amend. IV. "Warrantless searches and seizures in a home are presumptively unreasonable." *Howe v. State*, 112 Nev. 458,

---

[3]Kelly makes no argument as to what specific evidence should have been suppressed. As noted by the district court, it appears Kelly seeks to suppress all evidence discovered during, and stemming from, the DUI investigation near Kelly's residence.

463, 916 P.2d 153, 157 (1996) (quoting *Doleman v. State*, 107 Nev. 409, 413, 812 P.2d 1287, 1289 (1991)). Typically, "warrantless searches are permitted if based upon both probable cause and exigent circumstances." *Id.* (internal quotation marks omitted). However, consent exempts a search from the Fourth Amendment's probable cause and warrant requirements. *Id.* (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

*Officers' search of the carport and backyard, which includes the shed, was lawful*

First, Kelly argues that evidence should have been suppressed because the officers' entry into the shed and carport constituted an illegal search. We disagree.

The Fourth Amendment's protection against unreasonable search and seizure "extends to the curtilage of a house." *State v. Harnisch*, 113 Nev. 214, 219, 931 P.2d 1359, 1363 (1997), *clarified on denial of reh'g*, 114 Nev. 225, 954 P.2d 1180 (1998), *disapproved on other grounds by State v. Lloyd*, 129 Nev. 742, 312 P.3d 467 (2013). We consider four factors in determining whether an area such as a carport or a shed should be treated as curtilage:

> "[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken by the resident to protect the area from observation by people passing by."

*Id.* at 220, 931 P.2d at 1363 (quoting *United States v. Dunn*, 480 U.S. 294, 301 (1987)).

"[A] district court's determination of whether an area is within the protected curtilage of the home presents solely a question of fact." *Id.*

at 219, 931 P.2d at 1363. "[F]indings of fact in a suppression hearing will not be disturbed on appeal if supported by substantial evidence." *Id.* (alteration in original) (quoting *State v. Miller*, 110 Nev. 690, 694, 877 P.2d 1044, 1047 (1994)). Thus, "the district court's findings will be upheld unless this court is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted).

Here, the district court found that Kelly's carport was enclosed on two sides, one side by the residence and the other side "by sheets of plywood, above which were lengths of semi-transparent plastic material," and that "no fences, gates or other barriers prevented access to the back lot and shed through the carport," both of which "were plainly visible from the street through the carport." Additionally, the district court found that one of the two doors to the residence was located within the carport and that a doorbell was next to the carport door.

The district court concluded that while inside the carport, the officers were not committing a Fourth Amendment violation because they "were in a place that visitors could be expected to go—one of the two doorways to the mobile home, access to which was barrier-free and clearly visible from a public street," and that "the officers were within a route any door-to-door sales person, delivery man, or invited or uninvited visitor might pick to knock on a door or ring the doorbell in an attempt to summon . . . occupants." We hold the district court was correct in this conclusion.

We further hold substantial evidence supports the district court's findings of fact and its conclusions of law. When applied here, the *Harnisch* factors support the district court's findings and conclusions. *See id.* at 220, 931 P.2d at 1363. Although Kelly's carport was adjacent to his

home and was enclosed on two sides, one of the two doors being located within the carport, the lack of fencing or barriers to prevent access to the carport or back lot, and the plain visibility of the carport and shed from the street, represent substantial evidence supporting the district court's findings of fact.

Additionally, because the curtilage is considered part of the home for Fourth Amendment purposes, consent to search one's home includes the curtilage. *See Regels v. Giardono*, 113 F. Supp. 3d 574, 596 (N.D.N.Y. 2015); *see also Woods v. State*, 371 S.E.2d 865, 866 (Ga. 1988) (finding that written consent to search "940 N. Jackson Street" "impliedly included consent to search the curtilage"); *State v. Sutton*, 434 N.W.2d 689, 696 (Neb. 1989) (finding that where "defendant and his wife both . . . gave oral permission for the investigating officers to search their residence for a gun," the oral consent extended to searching "the curtilage of the home in an area that could be described as part of the house"). We therefore conclude that Askin's consent to search the home extended to the shed, which is part of the curtilage of the home.[4]

---

[4]We note that the district court concluded the officers' search of the shed was lawful because the officers had probable cause and the exigent circumstances of the investigation justified a warrantless search. We conclude that because the shed is part of the curtilage and Askins consented to searching the curtilage, we need not reach the issue of whether probable cause and exigent circumstances were present for that search.

SUPREME COURT
OF
NEVADA

(O) 1947A

*The officers had probable cause to open the Jeep door*

Second, Kelly argues evidence should have been suppressed because the officer's illegal opening of the Jeep door in order to make contact with Askins began a series of illegal searches. We disagree.

"A warrantless search of a car is valid under the Fourth Amendment so long as the search is based on probable cause." 68 Am. Jur. 2d *Searches and Seizures* § 278 (2017); *see also State v. Lloyd*, 129 Nev. 739, 750, 312 P.3d 467, 474 (2013); Thomas B. McAffee, John P. Lukens & Thaddeus J. Yurek III, *The Automobile Exception in Nevada: A Critique of the* Harnisch *Cases*, 8 Nev. L.J. 622, 630-31 (2008).

Given the Churches' anonymous tip indicating alcohol was inside the vehicle, that the driver of the vehicle was possibly intoxicated, and the presence of Askins, a potential suspect, within the vehicle, we conclude the officers had probable cause to initiate a search of the vehicle. Therefore, we affirm the district court in this respect.

*Kelly's arrest was lawful*

Kelly argues the officers' ordering him out of the shed at gunpoint and handcuffing him amounted to an arrest without probable cause or exigent circumstances, and that his disappearance "did not merit escalation of a possible seizure to an arrest particularly where, as here, apparently no threatening noises were heard." We disagree.

An investigatory stop requires reasonable suspicion, *Terry v. Ohio*, 392 U.S. 1, 19-31 (1968), while an arrest requires probable cause, U.S. Const. amend. IV. "The totality of the circumstances determines whether and when an investigatory stop becomes an arrest." *United States v. Edwards*, 761 F.3d 977, 981 (9th Cir. 2014). In considering the totality of the circumstances, courts examine two main components of the detention: (1) "the intrusiveness of the stop, i.e., the aggressiveness of the

police methods and how much the plaintiff's liberty was restricted," analyzed "from the perspective of the person seized, assessing whether a reasonable innocent person in these circumstances would . . . have felt free to leave after brief questioning"; and (2) "the justification for the use of such tactics, i.e., whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken," an inquiry "undertaken . . . from the perspective of law enforcement, while bearing in mind that the purpose of a *Terry* stop is to allow the officer to pursue his investigation without fear of violence." *Id.* (alterations in original) (internal quotation marks and citations omitted). However, given

> the "inherent danger of the situation and the intrusiveness of the police action, . . . pointing a weapon at a suspect and handcuffing him, or ordering him to lie on the ground, or placing him in a police car will not *automatically* convert an investigatory stop into an arrest that requires probable cause."

*Id.* at 982 (alteration in original) (quoting *Washington v. Lambert*, 98 F.3d 1181, 1186 (9th Cir. 1996)).

Here, the officers testified that (1) they believed Kelly was a probationer who had been drinking and who was hiding from law enforcement in a shed that possibly housed items that could be used as weapons, (2) that they drew their weapons for officer safety during the search of the residence and the shed and re-holstered them after Kelly was removed from the shed, and (3) that Kelly was initially handcuffed but the handcuffs were removed.

We hold that the officers' actions were constitutional: although Kelly's liberty was restricted, the officers' actions, given the possibility of weapons in the shed, were sufficiently based on concern for the officers' safety, and thus were objectively reasonable. Accordingly, we conclude

that the officers' actions did not amount to an arrest but were done for officer safety. Therefore, the district court did not err in denying this claim. Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, C.J.
Cherry

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

Supreme Court
OF
Nevada

(O) 1947A

cc: Hon. Alvin R. Kacin, District Judge
     Elko County Public Defender
     Attorney General/Carson City
     Elko County District Attorney
     Elko County Clerk