THE STATE OF NEVADA, APPELLANT, *v.*
MANUEL HARDIN, RESPONDENT.

No. 7393

January 17, 1974        518 P.2d 151

*Robert List,* Attorney General, Carson City; *Roy A. Woofter,* District Attorney, *Charles L. Garner,* Chief Deputy District Attorney for Appeals, and *H. Leon Simon,* Deputy District Attorney, Clark County, for Appellant.

*Wiener, Goldwater & Galatz, Ltd.,* of Las Vegas, for Respondent.

## OPINION

By the Court, GUNDERSON, J.:

On the basis of incriminating evidence observed in plain view upon opening respondent's hotel room door, North Las Vegas policemen arrested respondent, found more evidence while searching respondent incident to his arrest, and charged him with the robbery and murder of the tenant of an adjoining room.

After preliminary examination, the justice's court held respondent for trial; however, on his motion the district court suppressed all evidence discovered when respondent's room door was opened without a warrant, and through the ensuing warrantless arrest and search. The State has appealed.[1]

The facts are not in dispute. Summoned to investigate a homicide in Room 83 of the Mintz Hotel, where a violent struggle apparently had taken place, the police found a blood-drenched corpse, its throat cut and multiple stab wounds in its chest. Identification officers began collecting physical evidence, and thereafter, having no suspect, detectives commenced interviewing occupants of neighboring rooms, seeking information to throw light on the crime. Although respondent had earlier been seen entering Room 82, he did not respond to the officers' knock. For all they knew, he might have been asleep, drunk, or merely attempting to avoid visitors. Believing it essential to interview respondent, whose room was closest to the death scene, and who therefore was most likely to have heard the final conflict, the officers opened his door with the manager's passkey.

The key to Room 83 lay on the floor in plain view. Wearing a blood-stained shirt, respondent was on the bed, staring up at the officers. When they ordered him to his feet, a knife later identified as the death weapon fell to the floor. Key and knife were blood stained. The officers placed respondent under arrest and, in the ensuing search, found the victim's wallet on his person. In ordering these items suppressed, the district court stated that the record "is devoid of facts which might justify the officers' initial entry of Room 82." We disagree.

1. As the district court noted, the hotel manager could not consent to a search of respondent's room. The United States Supreme Court has so held, saying:

"[W]hen a person engages a hotel room he undoubtedly gives 'implied or express permission' to 'such persons as maids, janitors or repairmen' to enter his room 'in the performance of their duties.' 342 U.S., at 51. But the conduct of the night clerk and the police in the present case was of an entirely different order. In a closely analogous situation the Court has held that a search by police officers of a house occupied by a tenant invaded the tenant's constitutional right, even though the search

---

[1]Effective July 1, 1973, appeals from interlocutory orders granting or denying motions to suppress are no longer authorized. See Stats. of Nev. 1973, ch. 730, p. 1489–1490. This appeal was instituted before repeal of NRS 177.015(1)(b)(2).

was authorized by the owner of the house, who presumably had not only apparent but actual authority to enter the house for some purposes, such as to 'view waste.' *Chapman* v. *United States,* 365 U.S. 610. . . .

"No less than a tenant of a house, or the occupant of a room in a boarding house, *McDonald* v. *United States,* 335 U.S. 451, a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures. *Johnson* v. *United States,* 333 U.S. 10. That protection would disappear if it were left to depend upon the unfettered discretion of an employee of the hotel." Stoner v. California, 376 U.S. 483, 489–490 (1964); United States v. Jeffers, 342 U.S. 48 (1951); Lustig v. United States, 338 U.S. 74 (1949).

However, we believe cases like *Stoner, Jeffers* and *Lustig,* cited above, have but superficial similarity to this one, and that reliance on such cases would here be misplaced. In each, a pre-determination to search clearly existed; discovery of evidence was not inadvertent. The instant case, we feel, is of different character altogether, and should be considered in light of authorities decided under the so-called "emergency doctrine" exception to the Fourth Amendment's warrant requirement.

2. In this regard, it should first be observed that the United States Supreme Court has said the "core" of the Fourth Amendment is the security of the individual's "privacy against arbitrary intrusion by the police." Wolf v. Colorado, 338 U.S. 25, 27 (1949). Implementing this principle, the Court has mandated that warrantless police invasions of personal privacy "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). The burden rests with those seeking exemption from the general rule requiring a warrant to prove that "the exigencies of the situation made that course imperative." McDonald v. United States, 335 U.S. 451, 456 (1956). Subject to that burden, an "emergency doctrine" exception to the Fourth Amendment's warrant requirement is generally recognized.

One court has claimed the "emergency doctrine" exception derives from a dictum of Justice Jackson in Johnson v. United States, 333 U.S. 10 (1948). See: Root v. Gauper, 438 F.2d 361, 364 (8th Cir. 1971). However, another has asserted "[t]he right of the police to enter and investigate in an emergency without the accompanying intent to either search or arrest is inherent in the very nature of their duties as peace officers, and derives from the common law." United States v.

Barone, 330 F.2d 543, 545 (2d Cir. 1964). In any event, although the doctrine's origins may be debatable, and although it has never been definitively explained by the Supreme Court of the United States, lower courts have consistently recognized and applied it in a variety of fact situations.[2] One author has summarized the doctrine as follows:

"Law enforcement officers may enter private premises without either an arrest or a search warrant to preserve life or property, to render first aid and assistance, or to conduct a general

[2]The "emergency doctrine" exception has been applied recently in these fact situations, among others:

Where robber with demonstrated "great proclivity for shooting people" fled into apartment building, police in hot pursuit properly conducted systematic warrantless search of all units for suspects and weapons. People v. Bradford, 104 Cal.Rptr. 852 (Cal.App. 1973).

Where police were called to hotel because of gunfight, finding one person shot in lobby, and room-clerk said another apparently injured person had gone upstairs carrying a gun, warrantless entry of the latter's room was justified; however, no one being there, search of a closed suitcase was improper. United States v. Goldenstein, 456 F.2d 1006 (8th Cir. 1972).

Where officers knew bank had been robbed, were informed certain persons had been planning a bank robbery, located getaway car near house of brother of alleged planner, and heard shots and sounds of men escaping before they could knock on the door, officers properly entered to see if anyone was still there and lawfully seized objects used in robbery which were in plain sight. United States v. Holiday, 457 F.2d 912 (3rd Cir. 1972).

Police called to murder scene who had reason to believe perpetrator might still be inside building, and who found blood spots seeming to lead to an apartment upstairs, and who after knocking entered to see if anyone was hiding, lawfully seized blood-stained pants on hanger in closet. Fellows v. State, 283 A.2d 1 (Md.App. 1972).

Where officers were told several persons were unsuccessful in contacting defendant's mother, and officers smelled apparent odor of decaying human flesh upon entering the building where defendant shared apartment with her, they justifiably turned knob and opened door of apartment, thereby observing the mother's corpse on couch; and thereupon subsequent entry and observation of blood-stained rug and shirt also were justified. People v. Brooks, 289 N.E.2d 207 (Ill.App. 1972).

Police properly entered enclosed yard of home pursuant to occupant's distress telephone call, although another occupant met them with assurances that all was well. State v. Sainz, 501 P.2d 1199 (Ariz.App. 1972).

Where police were informed unknown man had seized young girl and forced her first into one apartment and then into another vacant apartment across the hall, using a knife to subdue her, and it appeared assault would have been even more violent and vicious if the victim had not escaped as assailant sat drinking wine, it was reasonable for police to consider assailant's identification and apprehension so imperative that entry of the first apartment was justified, when no one responded to their knock. Durham v. United States, 237 A.2d 830 (D.C.App. 1968).

Officers informed by victim's employer that victim was dead or dying

inquiry into an unsolved crime, provided they have reasonable grounds to believe that there is an urgent need for such assistance and protective action, or to promptly launch a criminal investigation involving a substantial threat of imminent danger to either life, health, or property, and provided, further, that they do not enter with an accompanying intent to either arrest or search. If, while on the premises, they inadvertently discover incriminating evidence in plain view, or as a result of some activity on their part that bears a material relevance to the initial purpose for their entry, they may lawfully seize it without a warrant." E. Mascolo, *The Emergency Doctrine Exception to the Warrant Requirement Under the Fourth Amendment,* 22 Buff.L.Rev. 419, 426–427 (1973).

We note that in the instant case the police officers were confronted, not merely with a violent homicide, but one which reasonably justified fears that its perpetrator constituted "a

---

of head wound properly entered apartment shared by victim and defendant to give aid, and thus seizure of articles in plain view near victim was lawful. Patrick v. State, 227 A.2d 486 (Del. 1967).

Where police found defendant unconscious in car, an attempted suicide, and received no response from wife after knocking on door of their home, and thereupon shone light through a window and observed feet protruding from bedding covering the rest of an apparent human figure, officers' entry was justified. Webster v. State, 201 So.2d 789 (Fla. App. 1967).

Where two policemen had been killed by forger, whose female confederate was captured and told their mutual place of abode, saying murderer might return there, other officers were justified in entering to "stake it out" and to seek clues to murderer's true identity and possible whereabouts. People v. Smith, 409 P.2d 222 (Cal. 1966).

Where police heard screams emanating from apartment, demanded entry, looked through apartment for female in distress, and thus observed and seized scraps of counterfeit money floating in commode, their actions were lawful. United States v. Barone, 330 F.2d 543 (2d. Cir. 1964).

Officers called to investigate brutally beaten human body at rear of house, who through window saw feet of other person inside, but could not determine whether feet were those of person in distress, justifiably effected warrantless entry. Davis v. State, 204 A.2d 76 (Md. 1964).

Where officers investigating burglary satisfied trier of fact that they believed they heard moans while knocking on door of apartment where defendant's girlfriend lived, and gained admittance from manager in good faith to provide aid, thereupon finding contraband in plain view, their actions were justified. People v. Roberts, 303 P.2d 721 (Cal. 1956).

See also: People v. Somas, 327 N.Y.S.2d 779 (Nassau Co. Ct. 1972); State v. Phillips, 272 N.E.2d 347 (Ohio 1971); People v. Plane, 78 Cal. Rptr. 528 (Cal.App. 1969); Parman v. United States, 399 F.2d 559 (D.C.Cir. 1968); Wilson v. State, 217 N.E.2d 147 (Ind. 1966); and State v. Thompson, 139 N.W.2d 490 (Minn. 1966).

substantial threat of imminent danger" to life. The condition of the victim and his room suggested a killer who might strike repeatedly if not apprehended. These facts obviously provided the police grounds to believe there was urgent need to launch and pursue their investigation.

Clearly, after interviews with more distant neighbors of the victim proved unproductive, and after other methods of gaining respondent's attention proved unavailing, opening the door to seek an audience was both reasonably directed toward and confined to the officers' legitimate, nonexploratory, emergency purpose. In our view, therefore, this conduct did not constitute an "unreasonable search" in the constitutional dimension. The ensuing arrest clearly was on probable cause, and respondent tenders no suggestion that the incident search exceeded the scope approved in Chimel v. California, 395 U.S. 752 (1969).

3. Respondent relies heavily on Horack v. Superior Court of Orange County, 478 P.2d 1 (Cal. 1970). In that case, police attempted to justify entering and going throughout a home where a large stereo was playing loudly, by testifying that a neighbor, whose reliability they had not confirmed, called in a report that "she had seen two 'hippie-type' individuals with sleeping bags enter what she believed to be the vacant residence." *Id.* at 2. Not surprisingly, the California Supreme Court held this demonstrated no emergency, and therefore suppressed a small plastic "baggie" of marijuana found on the bedroom closet shelf, and more marijuana and a piece of hashish found in a shoe box on the linen closet's bottom shelf. The court noted that "[t]he only property to be protected was the bare carpeted house containing a stereo system, and the officers saw nothing to indicate any threat of damage or destruction," and observed further that "even the most vivid imagination would be unable to contrive imminent danger to human life." *Id.* at 4.

Respondent also relies on People v. Smith, 496 P.2d 1261 (Cal. 1972), in which a policeman sought to justify entering and going through a woman's apartment although a neighbor had informed him she was away, and although her child was safe with the neighbor, by testifying he was looking for the woman and for the child's jacket. Again, the California Supreme Court held no emergency was demonstrated, and suppressed marijuana seized in the mother's bedroom.

Manifestly, the significant facts of these cases are totally unlike those here concerned.

4. Respondent's counsel have repeatedly alluded to the fact that the officers had already been investigating the crime scene

for some 2½ hours, before they opened respondent's door. To us, why counsel consider that time lapse so compelling remains obscure, but they may think it somehow shows there remained no urgency to interview respondent. With that, we could not agree.

The investigation continued all the while, with three identification officers processing for and collecting physical evidence, and at least two detectives conducting interviews. Since this investigative team had no suspect after 2½ hours, and after interviews with tenants whose rooms were more remote from the victim's, then considering that the killer's likelihood of escape was increasing each minute, we do not perceive how need to interview respondent can be said to have expired.

The district court's order suppressing evidence is hereby reversed.

THOMPSON, C. J., and MOWBRAY, BATJER, and ZENOFF, JJ., concur.