SEAN ANDREW HANNON, Appellant, *v.*
THE STATE OF NEVADA, Respondent.

No. 50594

May 21, 2009                                                207 P.3d 344

[Rehearing denied July 31, 2009]
[En banc reconsideration denied September 15, 2009]

*Dennis A. Cameron*, Reno, for Appellant.

*Catherine Cortez Masto*, Attorney General, Carson City; *Richard A. Gammick*, District Attorney, and *Joseph R. Plater*, Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, PARRAGUIRRE, J.:

In this appeal, we consider whether an emergency reason existed for a warrantless entry into a private residence. In resolving this issue, we bring our standard for emergency home entries into conformity with the recent United States Supreme Court decision in *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006). Under that standard, the warrantless entry into appellant's apartment was unlawful as there was no objectively reasonable basis to believe that the two occupants or any undisclosed third party may have been in danger inside. Accordingly, we conclude that the district court erred in denying appellant's motion to suppress the evidence of marijuana recovered during a subsequent search and reverse the district court's judgment of conviction.

### *FACTS AND PROCEDURAL HISTORY*

On the afternoon of July 29, 2006, appellant Sean Andrew Hannon and his girlfriend, Lea Robinson, were overheard arguing in their apartment. During the argument, Robinson became emotional, screamed at Hannon, and slammed the bathroom door against the wall.

Having overheard "yelling and screaming [and] thumping against the walls" in Hannon's apartment, a neighbor called 911 to report a possible domestic disturbance. In response, Officer Eric Friberg and his trainee were dispatched to the scene. Before knocking on Hannon's door, the officers confirmed with the neighbor what he had overheard.

Although approximately 45 minutes had elapsed since the argument had dissipated, Robinson answered the door red-faced, crying, and breathing hard. As Robinson opened the door, Officer Friberg observed Hannon in the background in a tank top and underwear. He appeared to be flushed and "angry."

Speaking to Robinson through the cracked door, Officer Friberg explained that he was responding to a possible domestic disturbance and asked if she was injured. Robinson replied no, though she admitted having a verbal argument with Hannon earlier that day. Robinson was then asked whether anyone else was inside and whether they were injured. Robinson answered that nobody was injured and that nobody else was inside except Hannon.

Despite these reassurances, Officer Friberg stated that he "needed to come inside to check everybody's welfare and make sure everybody was okay." He then asked Robinson for permission to enter. Robinson refused to allow the officers to enter and asked if they had a warrant. The officers then sought permission from Hannon. Again, the officers were told that they could not come inside the apartment.

Although he had twice been denied entry, Officer Friberg persisted by "push[ing] the [apartment] door slightly open." As the officers crossed the unit's threshold, Hannon ran into the kitchen and threw a dark bag into a cupboard, prompting Officer Friberg to push his way past Robinson into the apartment. According to Officer Friberg, he forcibly entered the apartment, not because of Hannon's sudden dash to the kitchen, but to protect the safety of its occupants.

Once inside, the officers conducted a protective sweep and observed marijuana and assorted paraphernalia on the living room table and marijuana leavings on the kitchen counter. Based on these observations, Officer Friberg advised his sergeant by phone that he wanted to seek a warrant to search Hannon's kitchen cupboard.

Having overheard the call, Hannon asked Officer Friberg whether "[y]ou tear up houses when you obtain search warrants?" Concerned with avoiding a full-blown search, Hannon offered to allow the officers to search the cupboard if they would forgo a warrant.

Officer Friberg accepted the offer. After verifying Hannon's consent, he then recovered a pillowcase-sized plastic bag of marijuana from the kitchen cupboard. Thereafter, Hannon was arrested for the possession of a controlled substance for the purpose of sale.

Following his arrest, Hannon filed a motion to suppress, challenging the reasonableness of the warrantless entry. At the evidentiary hearing, Officer Friberg admitted that "[he] didn't have evidence" that another occupant may have been inside who needed emergency assistance, he "just had suspicions."

Nevertheless, applying the emergency home entry standard recently announced in *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006), the district court considered Robinson's distressed appearance, the nature of the 911 call, and Officer Friberg's experience and training in domestic violence situations, and concluded that there was "objective information" to justify the warrantless entry and denied Hannon's motion. As a result, Hannon entered a conditional plea of nolo contendere to simple possession.[1] This appeal followed.[2]

## DISCUSSION

In this case, the police entered Hannon's apartment for a single stated purpose—to render emergency aid to any potential third parties inside. Given the entry's one-dimensional nature, this case deals exclusively with the emergency exception to the warrant requirement. While we defer to the factual findings supporting the district court's ruling on Hannon's motion, we review de novo whether the emergency exception justifies the warrantless entry here. *See State v. Lisenbee*, 116 Nev. 1124, 1127, 13 P.3d 947, 949 (2000).

### Emergency exception

Warrantless home entries, the chief evil against which the Fourth Amendment protects, *see Payton v. New York*, 445 U.S. 573, 585 (1980), are presumptively unreasonable unless justified by a well-delineated exception, such as when exigent circumstances exist. *See Camacho v. State*, 119 Nev. 395, 400, 75 P.3d 370, 374 (2003). Under established law, *see, e.g.*, *Alward v. State*, 112 Nev. 141, 151, 912 P.2d 243, 250 (1996), *overruled in part on other grounds by Rosky v. State*, 121 Nev. 184, 190-91 & n.10, 111 P.3d 690, 694 & n.10 (2005), one such exigency is the need to "render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City*, 547 U.S. at 403.

Unlike "hot pursuit" situations or the need to preserve evidence, warrantless entries for emergency reasons do not require probable cause. *See U.S. v. Snipe*, 515 F.3d 947, 952 (9th Cir. 2008). Emergencies, therefore, are analytically distinct from other exigent cir-

---

[1]NRS 174.035(3) (permitting conditional pleas of nolo contendere in exchange for the right to appeal a pretrial ruling).

[2]While this case was assigned to District Judge Jerome M. Polaha, who accepted Hannon's change of plea and entered the judgment of conviction in this matter, District Judge Janet Berry heard and decided Hannon's suppression motion.

cumstances. 3 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 6.6(a), at 451 (4th ed. ·2004). Thus, although some taxonomical debate exists regarding its proper classification, whether as a type of exigency or a freestanding exception to the warrant requirement, *id.*; *compare U.S. v. Holloway*, 290 F.3d 1331, 1337 (11th Cir. 2002) ("[E]mergency situations involving endangerment to life fall squarely within the exigent circumstances exception."), *with People v. Hebert*, 46 P.3d 473, 478-79 (Colo. 2002) (warrantless emergency entries fall within the community caretaking exception), emergency entries are "assessed separately and by a distinct test." LaFave, *supra*, § 6.6(a), at 451 n.6.

### Controlling standard—Brigham City v. Stuart

Although Nevada's existing two-pronged test for emergency home entries permits courts to consider law enforcement's subjective motivations, the standard recently announced in *Brigham City* eliminates such a consideration. 547 U.S. at 404.

Under Nevada's existing test, an emergency home entry is permissible without a warrant if law enforcement officers (1) reasonably believe that emergency assistance is needed, and (2) lack the " ' ' "accompanying intent to either arrest or search." ' ' " *See, e.g., Geary v. State*, 91 Nev. 784, 790 n.3, 544 P.2d 417, 421 n.3 (1975) (quoting *State v. Hardin*, 90 Nev. 10, 15, 518 P.2d 151, 154 (1974) (quoting E. Mascolo, *The Emergency Doctrine Exception to the Warrant Requirement Under the Fourth Amendment*, 22 Buff. L. Rev. 419, 426-27 (1973))). This test—the wording of which derives from a law review article—was first adopted in *State v. Hardin*, 90 Nev. at 16, 518 P.2d at 154, and has since been applied in later cases, though with varying degrees of attention to its second prong. *Compare Alward*, 112 Nev. at 151, 912 P.2d at 250 (not citing or applying the second prong), *Johnson v. State*, 97 Nev. 621, 624, 637 P.2d 1209, 1211 (1981) (citing but not applying second prong), *abrogated in part by Horton v. California*, 496 U.S. 128 (1990), *Koza v. State*, 100 Nev. 245, 253, 681 P.2d 44, 49 (1984) (same), *and Geary*, 91 Nev. at 790 n.3, 544 P.2d at 421 n.3 (same), *with Murray v. State*, 105 Nev. 579, 583, 781 P.2d 288, 290 (1989) (citing and applying second prong), *Banks v. State*, 94 Nev. 90, 97-98, 575 P.2d 592, 597 (1978) (same), *and Hardin*, 90 Nev. at 15-16, 518 P.2d at 154 (same).

To the extent that our caselaw still condones inquiring into law enforcement's subjective motivations in the context of an emergency home entry, as other courts have done, *see, e.g., U.S. v. Snipe*, 515 F.3d 947, 952 (9th Cir. 2008); *U.S. v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006); *State v. Edwards*, 945 A.2d 915, 918 (Vt. 2008),

we abandon our previous test in favor of the standard announced in *Brigham City*, which clarifies "the appropriate Fourth Amendment standard governing warrantless entry by law enforcement in an emergency situation." 547 U.S. at 402.

Under that standard, a law enforcement officer's "subjective motivation is irrelevant." *Id.* at 404. Rather, the reasonableness of an emergency home entry depends on whether " 'the circumstances, viewed *objectively*, justify [the] action,' " *id.* (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978) (alteration in original)), in other words, whether law enforcement had an objectively reasonable basis to believe that there was an immediate need to protect the lives or safety of themselves or others. *See Snipe*, 515 F.3d at 952; *Najar*, 451 F.3d at 718; *see also U.S. v. Huffman*, 461 F.3d 777, 785 (6th Cir. 2006).

### *Officer Friberg lacked an objectively reasonable belief*

Applying the *Brigham City* standard, the district court concluded that there was "objective information" to justify the emergency entry into Hannon's apartment. Even accepting the district court's factual findings as true, *see Lisenbee*, 116 Nev. at 1127, 13 P.3d at 949, we disagree and conclude that this warrantless home entry was not justified on emergency grounds because there was no objectively reasonable basis to believe that a third party was injured inside.

With respect to this issue, both sides analogize and distinguish this case from *Brigham City*, where officers responded at 3 a.m. to complaints about a loud house party and overheard " 'some kind of a [tumultuous] fight' " inside. 574 U.S. at 406. Through a window, the officers saw a juvenile—who, with fists clenched, was being restrained by four adults—punch an adult in the face, sending the adult to the sink spitting blood. *Id.* In view of those circumstances, the United States Supreme Court determined that the officers had an objectively reasonable basis for believing that the injured adult might need help and that there was an imminent threat of violence. *Id.*

Here, by contrast, Officer Friberg had noticeably less information than the officers in *Brigham City* to support his belief that a third party was endangered inside Hannon's apartment.

First, unlike *Brigham City*, which involved actual violence as well as the clear threat "that the violence . . . was just beginning," *id.*, Officer Friberg did not witness, let alone overhear, sounds of an altercation when he arrived. Tellingly, because there was therefore no apparent need for swift action, *see Huffman*, 461 F.3d at 785; *U.S. v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002), instead of entering and announcing his presence (as occurred in *Brigham City*), Officer Friberg casually knocked on Hannon's front door.

Second, unlike in *Brigham City*, in which the officers witnessed the attack and the victim spitting blood, although Robinson was crying, Hannon appeared "angry," and both were flushed and breathing heavily, neither exhibited observable signs of injury. Moreover, when asked by Officer Friberg, both responded that they were unharmed. Thus, even if there was initial reason to believe that Hannon or Robinson may have been injured, Officer Friberg's concerns should have been allayed after interviewing Hannon and Robinson at the door.

Additionally, in contrast to *Brigham City*, where other partygoers were seen inside and surrounding the house, 547 U.S. at 406, no similar indicia existed to believe that a third person was inside Hannon's apartment, a point with which Officer Friberg agreed by admitting that while he suspected that another person might have been inside, "[he] didn't have evidence."

Considering the totality of these circumstances, Officer Friberg arrived at a quiet apartment in response to a 911 dispatch call regarding a possible domestic disturbance that—by all accounts—seemed to have already dissipated. Officer Friberg had no reason to believe that Hannon or Robinson had been injured, and had even less reason to believe that Hannon's apartment may have harbored an unidentified third person in need of emergency assistance.

Given the above, we conclude that Officer Friberg lacked an objectively reasonable basis to believe that there was an immediate need to protect the occupants of Hannon's apartment, real or suspected. Because the initial warrantless entry into Hannon's apartment was unlawful, we conclude that the marijuana recovered during the subsequent search was illegally seized. *See Ford v. State*, 122 Nev. 796, 803-04, 138 P.3d 500, 505 (2006); *see generally Wong Sun v. United States*, 371 U.S. 471 (1963). Accordingly, the district court's judgment of conviction is reversed.

## *CONCLUSION*

Based on the totality of the circumstances, we conclude that the warrantless entry into Hannon's apartment was not justified by an objectively reasonable belief that there was an immediate need to protect the occupants of Hannon's apartment. Because no emergency reason existed for forgoing a warrant, we conclude that the district court erred in denying Hannon's motion to suppress. Accordingly, we reverse the district court's judgment of conviction.

DOUGLAS and PICKERING, JJ., concur.