**134 Nev., Advance Opinion 66**

## IN THE COURT OF APPEALS OF THE STATE OF NEVADA

ANDREW ROBERT ALLEN LASTINE,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 73239

**FILED**

AUG 30 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of one count of leaving the scene of an accident involving personal injury. Second Judicial District Court, Washoe County; Patrick Flanagan, Judge.

*Reversed and remanded.*

Jeremy T. Bosler, Public Defender, and John Reese Petty, Chief Deputy Public Defender, Washoe County,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Christopher J. Hicks, District Attorney, and Joseph R. Plater, Appellate Deputy District Attorney, Washoe County,
for Respondent.

BEFORE SILVER, C.J., TAO and GIBBONS, JJ.

## OPINION

By the Court, GIBBONS, J.:

The Fourth Amendment to the United States Constitution and Article I, Section 18 of the Nevada Constitution provide that the people possess an inviolable right against unreasonable searches and seizures. Under both provisions, warrantless searches are per se unreasonable subject to a few specific exceptions. One such exception is the consent of a third party who has authority over the premises or effects to be searched.

Though Nevada's jurisprudence has delineated the basic principles governing consent as an exception to the warrant requirement, this case presents a question concerning that exception that our caselaw does not fully address: how does a person's living arrangement within a third party's residence affect that third party's legal authority to consent to a search of the other person's living space? Additionally, can law enforcement officers rely upon the consent of a third party to search a room within a residence without asking about the living arrangements within that residence?

Looking to federal caselaw, we conclude that law enforcement officers cannot justify a warrantless search of a bedroom inside a home by pointing to the consent of a third party when the third party did not have authority to consent and officers have little or no information about that third party's authority over the bedroom. Accordingly, we instruct law enforcement officers to make sufficient inquiries about the parties' living arrangements and the third party's authority over them before conducting a warrantless search.

## FACTS AND PROCEDURAL HISTORY

On Wednesday, January 7, 2016, Gertrude Green's vehicle was rear-ended by a truck while waiting at a traffic light on her drive home from work, and she suffered a whiplash injury. The driver of the truck drove away after striking Green's car. Green and one witness told first responders they believed the driver was a man.

In the debris field on the road, a Nevada Highway Patrol trooper found a license plate that did not belong to Green's car. The trooper ran the plate through dispatch and discovered the plate belonged to a truck registered to Andrew Lastine. Due to concurrent jurisdiction in the area, Washoe County Sheriff's Deputy Francisco Gamboa headed to the address listed on the truck's registration.

When he arrived at the address at about 6 p.m., Deputy Gamboa observed a small truck in the driveway with front-end damage and smoke or steam coming from the engine compartment. The license plate matched the one found at the scene of the Green accident. He also saw footprints in the snow leading from the truck to the house located at the address. Based on these observations, Deputy Gamboa initiated a "knock and talk" investigation.[1]

Robert Lastine (Robert) answered the door. Deputy Gamboa identified himself after Robert stepped outside. He then informed Robert about the Green accident and that the license plate found at the scene of the Green accident matched the license plate on the truck. Deputy Gamboa

---

[1] In a "knock and talk" investigation, police officers "approach the front door of a residence," knock on the door, and seek "to speak to an occupant for the purpose of gathering evidence." *Florida v. Jardines*, 569 U.S. 1, 21 (2013) (Alito, J., dissenting).

asked Robert who owned the truck, and Robert told him that his nephew, Andrew Lastine, owned the truck. Robert also told Deputy Gamboa that Lastine was probably in "the back bedroom" of the house. At some point later, Deputy Gamboa asked for permission to enter Robert's house to "find the owner of the truck." Robert apparently said, "go get him."

As a safety precaution, Deputy Gamboa waited for a back-up deputy, Deputy Martin Obos, to arrive at the residence before entering the house. He did not attempt to secure a telephonic search warrant or ascertain Lastine's physical condition while he waited. When Deputy Obos arrived, both he and Deputy Gamboa walked into the house, and Robert guided them to a hallway and pointed to a door indicating it led into the back bedroom where he suggested they might find Lastine.

According to Deputy Gamboa, he and Deputy Obos stood at the bedroom door, did not knock, but announced "police, sheriff's office." After no response, the deputies pushed the door open. The bedroom was dark, but Deputy Gamboa testified he could make out a bed directly in front of the doorway with a person, later identified as Lastine, on it under a blanket. They ordered Lastine to show his hands, but he refused. The deputies entered the bedroom, removed the blanket covering Lastine, and placed him in handcuffs. Inside the bedroom, the deputies saw a pair of tennis shoes with snow and mud on them and snowy, muddy footprints. The deputies removed Lastine from the bedroom and placed him on a couch in the living room.

Later, Nevada Highway Patrol Trooper Alyssa Howald arrived at the residence from the scene of the Green accident. She met with Deputy Gamboa outside the house, and he told her that he and Deputy Obos had a suspect in custody inside the house. Deputy Gamboa explained that the

footprints that led in the snow from near the driver's side door of the truck to a door at that residence matched the tread on a pair of shoes he found in Lastine's room, where Lastine was located.

Trooper Howald entered the house and placed Lastine under arrest. She performed a search of Lastine's person incident to that arrest and found a set of keys in his pants pocket. Without more, Trooper Howald used a key from the set to open the locked truck and started the truck's engine.

Trooper Howald transported Lastine to the Washoe County jail. Though Trooper Howald did not ask him any questions, Lastine made several spontaneous remarks, including stating he was an "idiot and that's all that matters."

Lastine was charged with one count of leaving the scene of an accident involving personal injury. He moved to suppress the evidence gathered as a result of the deputies' warrantless entry into his bedroom and the trooper's warrantless entry into his vehicle. The district court denied most of Lastine's motion, granting only his request to suppress the fact that the keys Trooper Howald found in his pocket opened and started the truck.

Lastine's case proceeded to a jury trial. The jury found him guilty of leaving the scene of an accident involving personal injury. He was sentenced to serve three to ten years in prison. This appeal follows.

*ANALYSIS*

Lastine argues that the district court erred by denying in part his motion to suppress. In particular, he argues that Robert did not have actual or apparent authority to consent to a search of Lastine's bedroom because that bedroom "was not a commonly shared area." Further, he

argues that, given the totality of the circumstances, no exigency existed to justify the deputies' warrantless entry into his bedroom.

The Fourth Amendment generally prohibits the warrantless entry of a person's home. *See Payton v. New York*, 445 U.S. 573, 585-86 (1980). Warrantless searches are per se unreasonable, unless an "established and well-delineated exception[ ]" applies. *State v. Lloyd*, 129 Nev. 739, 743, 312 P.3d 467, 469 (2013) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One exception to the warrant requirement "is the valid consent of a third party who possesses actual authority over or other sufficient relationship to the premises or effects sought to be inspected." *State v. Taylor*, 114 Nev. 1071, 1079, 968 P.2d 315, 321 (1998) (citing *United States v. Matlock*, 415 U.S. 164, 171 (1974)). Even if it later turns out that the third party did not have actual authority over the area searched, the search may still be valid under the apparent authority doctrine if the law enforcement officers reasonably believed, based upon the facts available to them at the moment of the warrantless search, the consenting party had actual authority. *See id.* at 1080, 968 P.2d at 322.

The burden of establishing actual or apparent authority rests with the State. *See Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *see also United States v. Arreguin*, 735 F.3d 1168, 1174 (9th Cir. 2013) ("[T]he government has the burden of establishing the effectiveness of a third party's consent to a search of a defendant's property."). Because review of a district court's determinations concerning "authority to consent to a search requires consideration of both factual" and legal issues, "we review de novo the district court's decisions regarding authority to consent." *Taylor*, 114 Nev. at 1078, 968 P.2d at 321. In so doing, "this court treats the

district court's findings of fact deferentially . . . ." *McMorran v. State*, 118 Nev. 379, 383, 46 P.3d 81, 84 (2002).

*Did Robert have authority to consent to a search of Lastine's bedroom?*

In the proceedings below, the district court concluded that Robert was "the actual and apparent owner of the home and his authority to consent to a search included [Lastine's] bedroom." The court did not expressly parse out the legal distinctions between actual and apparent authority and the elements of each in its analysis. *See Rodriguez*, 497 U.S. at 181-83. We do so now, turning first to actual authority.

*Actual authority*

We first address whether Robert had actual authority to consent to a search of Lastine's bedroom. Actual authority to consent to a search is a legal condition that is wholly separate from and independent of what a particular law enforcement officer believes about a third party's authority over a premises or object to be searched. *See id.* at 181-82; *Matlock*, 415 U.S. at 171 n.7 (noting that common authority is based "on mutual use of the property by persons generally having joint access or control for most purposes"). "Actual authority is proved (1) where defendant and a third party have mutual use of and joint access to or control over the property at issue, or (2) where defendant assumes the risk that the third party might consent to a search of the property." *Taylor*, 114 Nev. at 1079, 968 P.2d at 321. "Actual authority does not require an ownership interest in the property by the third party and does not require the actual owner's presence at the time of the search." *Id.* (citations omitted).

Lastine argues that his bedroom was not a commonly shared area. He asserts that while Robert had actual authority to consent to the deputies' search of the common areas inside the house, Robert lacked actual

authority to consent to a search inside Lastine's bedroom, which was a separate room of the house.

The State counters that because Robert owned and lived in the house, he had actual authority to consent to a search of any room within that house, including Lastine's bedroom. We disagree with the State.

The Nevada Supreme Court addressed a third-party cohabitant's consent to a search within a residence in *Casteel v. State*. There, Casteel appealed from the district court's denial of his motion to suppress evidence the police discovered when they searched his apartment based on his live-in girlfriend's consent. 122 Nev. at 360, 131 P.3d at 3.

The supreme court considered, in relevant part, whether Casteel's live-in girlfriend had authority to consent to a search of their shared apartment and Casteel's gym bag, which was inside a closet in the apartment. *Id.* at 359-61, 131 P.3d at 2-4. It observed that "[a] warrantless search is valid if the police acquire consent from *a cohabitant* who possesses *common authority* over *the property* to be searched." *Id.* at 360, 131 P.3d at 3 (emphasis added) (citing *Rodriguez*, 497 U.S. at 181). The court concluded that Casteel's live-in girlfriend "clearly consented to the search and had equal control over the apartment." *Id.*

In this case, Robert and Lastine both lived in the residence. However, unlike in *Casteel*, they did not cohabit, "share," or possess "equal control over" Lastine's bedroom. Instead, Robert ceded most of his control of the bedroom to Lastine, and Lastine paid rent for the use of the bedroom. Consequently, Robert was in effect Lastine's landlord.

If we view Robert as Lastine's landlord, instead of or in addition to being a cohabitant of the house, his access to Lastine's room would be further limited. *See United States v. Warner*, 843 F.2d 401, 403 (9th Cir.

1988) (recognizing landlords' lack of authority to consent to a search of a tenant's apartment). Third parties such as landlords with access to an area only have actual authority to consent to a search of that area when they reserve a right of access "for most purposes," instead of a limited right of access to conduct repairs or maintenance, or engage in any other "narrowly prescribed" set of activities. *See id.*; *see also United States v. Kim*, 105 F.3d 1579, 1582 (9th Cir. 1997).

Here, Robert did not reserve a broad right of access "for most purposes" to Lastine's bedroom. Robert testified at the suppression hearing that he built the back bedroom as an addition to the modular home for the purpose of permitting others to live there. The room was attached to the home and shared a common roofline, but it was built on a separate foundation for all four of its walls. Robert also testified that he did not spend any time in the back bedroom and he did not enter the bedroom freely as the door was always closed and he knocked before entering. Consequently, Robert had only limited access to Lastine's bedroom and did not have actual authority to consent to the search of that room.

Still, if a defendant assumes the risk that some third party, such as a landlord, with limited access to the searched property, "will at times exceed the scope of authorized access," *United States v. Sledge*, 650 F.2d 1075, 1080 n.10 (9th Cir. 1981), then that third party will have "[actual] authority to consent to [a] search." *Kim*, 105 F.3d at 1582. A defendant generally assumes the risk when he cedes control of his property to another. *See Taylor*, 114 Nev. at 1079, 968 P.2d at 321 (concluding that Taylor gave control of his suitcase to a third party and assumed the risk she might allow law enforcement to search it when the suitcase was checked in

Court of Appeals
of
Nevada

(O) 1947B

the third party's name, she kept the baggage claim ticket, and Taylor did not remain with the third party while they were in the airport together).

The State avers on appeal that Robert also possessed actual authority because Lastine assumed the risk that Robert would "consent to a search of his own house." The State did not argue this alternative below, and therefore it waived this argument. *See Emmons v. State*, 107 Nev. 53, 60-61, 807 P.2d 718, 723 (1991). But even if the court considered it on the merits, it fails. The State contends that Lastine failed to show he had exclusive control over the room or the details about the living arrangements, yet the evidence reveals that Lastine had a lock on the interior door and had closed the door—so Lastine took steps to protect his privacy interest. *Cf. Taylor*, 114 Nev. at 1079, 968 P.2d at 321. Moreover, the State's assumption-of-the-risk argument attempts to shift the burden onto Lastine to prove he possessed constitutionally protected privacy interests in the bedroom. At the outset, we reiterate that the burden of proving that a third party had authority to consent to a warrantless search rests with the State. *See Rodriguez*, 497 U.S. at 181. The defendant does not have the burden to disprove the third party's authority. *See id.*

Here, the State did not provide any proof that Robert entered Lastine's bedroom unannounced or otherwise exceeded his limited access to the bedroom such that Lastine assumed the risk that Robert would exceed his authorized access to Lastine's bedroom. Robert's testimony at the suppression hearing suggested the opposite—Lastine assumed no such risk, as Robert characterized the bedroom as Lastine's space that he rented, and the door was always closed. Additionally, the district court did not make any findings that Lastine assumed the risk. We conclude the State failed to meet its burden to prove that Robert possessed actual authority to

consent to a search of Lastine's bedroom. We turn now to apparent authority.

*Apparent authority*

The State argues that even if Robert did not have actual authority to consent to a search of Lastine's bedroom, Robert had apparent authority to authorize the search. Lastine counters that the deputies did not have sufficient facts available to them to justify the search based on the doctrine of apparent authority. We agree with Lastine.

Apparent authority is a misnomer of sorts. A third party does not possess apparent authority; rather, apparent authority exists when the law enforcement officers who conducted a warrantless search or seizure based on a third party's consent reasonably believed that the third party had actual authority to give consent. *See id.* at 183. In this way, apparent authority goes to the key assurance of the Fourth Amendment—that no search will occur that is *"unreasonable,"* not that no imperfect searches will occur. *See id.* (emphasis added). Thus, the apparent authority doctrine permits warrantless searches and seizures based upon the consent of a third party who lacks actual authority to consent so long as the law enforcement officers who relied upon the third party's consent acted reasonably given the circumstances available at the time of the search or seizure. *See id.* at 187-89.

To determine whether law enforcement officers possessed an objectively reasonable belief that a third party had authority to consent to a search of a certain area, we assess the reasonableness of their belief by considering "the facts available to [them] *at the moment.*" *Arreguin*, 735 F.3d at 1175 (quoting *Rodriguez*, 497 U.S. at 188). Again, the State has the burden to show the officers' belief concerning the third party's authority to consent to a search was reasonable concerning "each specific area searched."

COURT OF APPEALS
OF
NEVADA

(O) 1947B

*Id.* (brackets omitted). When law enforcement officers proceed to search an area based on the consent of a third party "in a state of near-ignorance" without obtaining sufficient information about the third party's authority, we cannot conclude they possessed an objectively reasonable belief that the third party had authority to consent to a search. *Id.* at 1176.

For example, consider the facts of *Arreguin* as they are similar to the present case. There, nine law enforcement officers knocked on the door of a house they suspected had been used for illegal drug-related activity. *Id.* at 1171-72. A man answered the door. *Id.* at 1172. The officers knew little about this man, the various rooms or areas inside the house, or the "nature and extent of [the man's] connection to those separate areas." *Id.* at 1175. Yet, despite their "near-ignorance," *id.* at 1176, the officers relied upon that man's consent to conduct a thorough search of a number of rooms inside the house, including the garage. *Id.* at 1172-73. Ultimately, they learned that the man was a visitor at the home and another occupant, whom they saw but did not question, owned the house. *Id.* at 1173.

The United States Court of Appeals for the Ninth Circuit concluded that the officers acted unreasonably by presuming the man who answered the door had authority to consent to their request to search without further inquiry. *Id.* at 1177. The court held that "[t]he failure to inquire properly weighs against the government, not [the defendant], because the police are simply 'not allowed to proceed on the theory that ignorance is bliss.'" *Id.* (quoting *United States v. Dearing*, 9 F.3d 1428, 1430 (9th Cir. 1993)).

We agree with the Ninth Circuit's approach. Law enforcement officers cannot use the apparent authority doctrine to justify a warrantless search when they fail to make a sufficient inquiry into the consenting

party's "use, access, or control over" the area to be searched. *Id.* We carefully scrutinize searches that occur in private areas such as bedrooms as "[t]he Fourth Amendment's protection is at its zenith within the home . . . ." *Thompson v. Rahr*, 885 F.3d 582, 589 (9th Cir. 2018) (citing *Payton*, 445 U.S. at 589-90). Law enforcement officers may not "always accept a person's invitation to enter [the] premises." *Rodriguez*, 497 U.S. at 188 (alteration to the original). When the facts available to and known by the officers are insufficient to establish a reasonable belief that the third party inviting the officers into the home to conduct a search has the authority to do so, "then warrantless entry without further inquiry is unlawful unless authority actually exists." *Id.* at 188-89.

In this case, the district court did not squarely address whether either Deputy Gamboa or Deputy Obos (or both) possessed an objectively reasonable belief based upon the totality of the circumstances available to them that Robert had authority to consent to a search of Lastine's bedroom. The court only stated that Robert was the apparent owner of the home.

Neither Deputy Gamboa nor Deputy Obos sufficiently inquired into Lastine's living arrangement. Deputy Gamboa knew that Robert lived in the house, Robert was Lastine's uncle, Lastine owned the truck outside the house, and Lastine may have been in the back bedroom of the house. Deputy Gamboa did not ask Robert about the ownership of the house or any rental arrangements regarding the rooms in the house. And Deputy Gamboa had time to ask Robert additional questions to gather relevant information about Lastine's living arrangement as he waited for Deputy Obos to arrive, but did not do so.

When faced with a situation like this in which the suspect in a crime is located within a private area of a home such as a bedroom—not in

13

a common area—and law enforcement officers choose to enter the private area without the consent of the person occupying the private area, but with the consent of a third party, they need to ensure the third party has the authority to allow the intrusion. The objective is to determine if the third party has the actual authority to consent to the search as discussed earlier in this opinion. Asking the third party about his control over the private area is the first step. Does the third party have primary control over or mutual use of the private area to be searched? Or is the area controlled and used primarily by the person suspected of the crime? If it is used primarily by the suspect, then further inquiries are needed to determine if it is a near exclusive use such as by a renter or tenant. Conducting such inquires is an indication that officers are acting in good faith in attempting to comply with the law when they do not choose to seek a search warrant. *See United States v. Leon*, 468 U.S. 897, 907-08, 919-20 (1984) (recognizing policy of limiting the extent of the exclusionary rule when police act in "objective good faith").[2] Such efforts could justify the application of the apparent authority doctrine if actual authority did not in fact exist.

Based on what the deputies knew about Lastine's living arrangement inside Robert's house, it appears they presumed that, because Robert answered the door, lived in the house, and was Lastine's older relative, Robert had authority to consent to the search of Lastine's bedroom. As in *Arreguin*, the deputies' presumption about Robert's authority based

---

[2]We note that the better practice is to obtain a search warrant when practical, and here, Deputy Gamboa had an opportunity to seek a telephonic search warrant while he waited for Deputy Obos to arrive. *See Leon*, 468 U.S. at 920-21 (stating that generally there is no illegal police action "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope").

on the information they gathered was unreasonable. Had the deputies conducted even a brief fact-finding inquiry, they would have learned Robert was the owner, but he did not have actual authority as: (1) Robert built the back bedroom in which Lastine lived as an addition to provide a separate living space; (2) although Lastine was an adult relative, he was also a paying tenant and could come and go as he pleased and have guests over without Robert's knowledge or authorization; and (3) the room had its own doors leading in and out of the house, there was a lock on the interior door, that door was normally kept closed, and Robert did not enter without knocking.[3] However, because the deputies failed to make any inquiries about the use and control of the bedroom, they did not have a sufficient basis to believe Robert had primary or even mutual use, access, or control over the bedroom. Neither Robert's occupancy of the house, nor his status as Lastine's older relative, without more, was enough to support the deputies' belief Robert had authority to consent to a search of Lastine's bedroom. Thus, under the totality of the circumstances in this case, we conclude the deputies did not gather sufficient information to form an objectively reasonable belief that Robert had authority to consent to a search of Lastine's separate bedroom.

*Did emergency circumstances justify entry into Lastine's bedroom?*

Lastine argues that no exigency existed to justify the deputies' warrantless entry into his bedroom. The State argued below in its brief that probable cause to arrest and officer safety justified the warrantless entry into the bedroom. The State, however, has abandoned these arguments on appeal and now only argues that the emergency doctrine justified entry into

---

[3]Robert testified to these facts during the suppression hearing.

Lastine's bedroom as Deputy Gamboa was concerned for Lastine's physical well-being. The district court made no findings as to whether an officer safety exigency or an emergency existed. *See Hannon v. State*, 125 Nev. 142, 145-46, 207 P.3d 344, 346 (2009) ("Emergencies . . . are analytically distinct from other exigent circumstances.").

Although the State did not clearly present the emergency doctrine as an argument below,[4] we will review the argument de novo and determine whether an emergency justified the deputies' entry into Lastine's bedroom. *See id.* at 145, 207 P.3d at 346. The subjective intent of the deputies is not relevant as we look to see if they possessed "an objectively reasonable basis to believe that there was an immediate need to protect the lives or safety of themselves or others." *Id.* at 147, 207 P.3d at 347.

The State argues Deputy Gamboa was concerned for Lastine's well-being because there had been a major car accident with damage to Lastine's truck. The State cites to *Koza v. State*, which describes the emergency doctrine as an urgent need to enter the private premises not to arrest or search, but to protect life or property *or investigate* a "substantial

---

[4]Although Deputy Gamboa answered affirmatively when prompted at the suppression hearing whether he was *potentially* concerned for Lastine's well-being, there was no other evidence presented that this potential concern led to the warrantless entry into Lastine's bedroom or that the entry was objectively reasonable. Furthermore, in its argument below, the State characterized the situation as a potential hypothetical (as no evidence or legal authority was presented) that the delay that would be caused by the telephonic search warrant process might have adversely affected the well-being of Lastine. But on appeal, the State recites in its brief the factual reason for the entry into the bedroom as, "Andrew refused to show his hands, so deputies entered the room. Robert Lastine [later] thought Andrew needed medical treatment."

threat of imminent danger." 100 Nev. 245, 252-53, 681 P.2d 44, 48 (1984) (quoting *Banks v. State*, 94 Nev. 90, 97, 575 P.2d 592, 596 (1978)).

When viewed objectively, the facts do not demonstrate a reasonable basis to believe Lastine was in imminent danger. Air bags were not activated at the time of the collision, and Lastine immediately drove from the scene of the accident to his home. Damage was observed to the exterior of his vehicle but not to the interior. There was no blood in or on his truck, and no blood was found in or on the home. Also, the deputies' actions were consistent with a criminal investigation and not the duty to protect life. Deputy Gamboa did not immediately enter the home or the bedroom to check on the welfare of Lastine. Instead, he waited for Deputy Obos to arrive and assist with the search.[5] Also, he did not ask Robert to check on Lastine's well-being at any time. Deputy Gamboa could not recall if paramedics later responded to the scene. He recalled that the fire department was dispatched, but only to check on the smoking vehicle.

Moreover, when the deputies attempted to initiate communication with Lastine at his bedroom door, they did not ask if he was injured. And, when they finally entered the room, it was a direct reaction to *both* Lastine's verbal and nonverbal refusal to show his hands, not because Lastine had been nonresponsive. The deputies then immediately searched, handcuffed, and took Lastine into their physical custody. It was only later when *Robert* expressed concern over Lastine's well-being that paramedics were summoned. In fact, Robert testified that Deputy Gamboa

---

[5]We note this fact undermines the argument raised in the hypothetical posed by the State during the suppression hearing because Deputy Gamboa had adequate time during this interval to seek a telephonic search warrant. *See* NRS 179.045.

COURT OF APPEALS
OF
NEVADA

(O) 1947B

did not ask for consent to enter the home to check on the well-being of Lastine. Therefore, the totality of the circumstances does not suggest an objectively reasonable basis to believe an immediate entry was needed to protect Lastine. *See id.*

Having concluded that Robert did not possess actual authority to consent to the deputies' entry into Lastine's bedroom, the deputies did not have an objectively reasonable belief that Robert had such authority, and no exigent or emergency circumstances existed, we further conclude the deputies' warrantless search was constitutionally unreasonable. Therefore, the district court erred by denying the motion to suppress all evidence obtained from the deputies' warrantless entry into Lastine's bedroom. *See United States v. Pulliam*, 405 F.3d 782, 785 (9th Cir. 2005) ("[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or fruit of the poisonous tree." (internal quotation marks omitted)).

*Was the district court's error in denying in part Lastine's motion to suppress harmless beyond a reasonable doubt?*

The State argues that if the district court erred by denying in part Lastine's motion to suppress, the error was harmless beyond a reasonable doubt, as overwhelming evidence supports the conviction. We disagree.

Where the issue has been preserved for appeal, we can only affirm a ruling containing constitutional errors if we are "able to declare a belief that [the errors were] harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967); *see also Medina v. State*, 122 Nev. 346, 355, 143 P.3d 471, 476-77 (2006). "Under this standard, reversal is not required if the State [can] show beyond a reasonable doubt that the

error complained of did not contribute to the verdict obtained." *Medina*, 122 Nev. at 355, 143 P.3d at 477 (internal quotation marks and citations omitted). The State does not meet this burden.

Important evidence the State presented at trial to prove that Lastine was the person who committed the crime came from the deputies' illegal entry into Lastine's bedroom. We cannot say beyond a reasonable doubt that admission of this evidence did not contribute to the verdict. Therefore, we conclude the State has not demonstrated that the district court's erroneous decision to deny the suppression of this evidence was harmless beyond a reasonable doubt.

## CONCLUSION

Law enforcement officers may conduct a warrantless search if a third party with common authority over an area consents to that search. A warrantless search based upon third-party consent is lawful so long as the third party has actual authority to consent *or* the law enforcement officers formed an objectively reasonable belief, based upon the facts available to them, that the third party had authority to consent.

Law enforcement officers cannot justify a warrantless search of a bedroom inside a home by pointing to the consent of a third party when the officers have little to no information about that third party's authority in the home. Rather, law enforcement officers should gather sufficient information about the living arrangements inside the home to establish an objectively reasonable belief that the third party has authority to consent to a search therein before proceeding with that search without a warrant, lest they risk the search being deemed unconstitutional. To this end, we encourage law enforcement officers to seek a warrant before conducting a search if practical, even when an exception to the warrant requirement seems to exist.

 

Because the district court erred in denying in part Lastine's motion to suppress evidence and the error was not harmless, we reverse the judgment of conviction and remand with instructions to grant Lastine's motion and suppress all evidence obtained as a result of the illegal entry.

_____, J.
Gibbons

We concur:

_____, C.J.
Silver

_____, J.
Tao

COURT OF APPEALS
OF
NEVADA

(O) 1947B